NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
ADRIAN F. VALLENS (State Bar No. 332013)
  adrianvallens@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendants
NEON RATED, LLC; WILLIAM MORRIS
ENDEAVOR ENTERTAINMENT, LLC;
MICHAEL SHANKS; ALISON BRIE; and
DAVE FRANCO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDIOFEST LLC, a New York limited liability company,<br><br>                    Plaintiff,<br><br>        vs.<br><br>WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, a California limited liability company; DAVE FRANCO, an individual; ALISON BRIE, an individual; MICHAEL SHANKS, an individual; NEON RATED, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:25-cv-04294-JLS-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:        September 19, 2025<br>Time:        10:30 a.m.<br>Dept.:        8A<br><br>**UNSEALED PURSUANT TO COURT'S SEALING ORDER [DKT. 26]** |

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 19, 2025 at 10:30 a.m., or as soon as may be heard in Courtroom 8A of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Neon Rated, LLC, William Morris Endeavor Entertainment, LLC, Michael Shanks, Alison Brie, and Dave Franco (collectively, "Defendants"), will and hereby do move this Court for an order dismissing with prejudice the complaint filed by plaintiff StudioFest LLC ("Plaintiff").

The motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's complaint fails to state a valid claim for copyright infringement because there is no substantial similarity of protected expression between Defendants' film *Together* and Plaintiff's work *Better Half (Or Metamorphosex)* ("*Better Half*"). The vast majority of alleged similarities between the works are unprotectable elements, including an unprotectable premise that Plaintiff admits comes from Greek mythology and has been explored in many other works. Plaintiff mischaracterizes the remaining alleged similarities to make them seem more similar than they are.

The motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman ("Freeman Decl."), the notice of lodging with exhibits, and all other matters which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 9, 2025.

DATED: July 25, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
ADRIAN F. VALLENS

By: /s/     Nicolas A. Jampol
            Nicolas A. Jampol

Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

i

DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 3

  A.   *Better Half* ................................................................................. 3

  B.   *Together* ...................................................................................... 4

III.  PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS ....... 6

  A.   Substantial Similarity May Be Decided on a Motion to Dismiss ........ 6

  B.   The Court Must Disregard Unprotectable Elements ............................ 6

  C.   The Works' Protected Expression Is Not Substantially Similar .......... 7

      1.   The Plot and Sequence of Events Are Not Similar.................... 8

          a.   The Alleged Similarities are Unprotectable ................. 8

          b.   The Plots and Sequences of Events Are Not Alike ....... 10

      2.   The Themes Are Not Similar ................................................ 14

      3.   The Characters Are Not Similar............................................ 15

          a.   Art (*Better Half*) and Millie (*Together*)......................... 16

          b.   Daphne (*Better Half*) and Tim (*Together*).................... 16

          c.   Other Characters ................................................... 17

      4.   The Settings Are Not Similar................................................ 18

      5.   The Dialogue Is Not Similar ................................................ 19

      6.   The Moods and Paces Are Not Similar................................... 20

IV.   PLAINTIFF'S SECONDARY LIABILITY ALLEGATIONS ARE
      INSUFFICIENT................................................................................... 21

V.    CONCLUSION................................................................................... 21

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Benjamin v. Walt Disney,*
    2007 WL 1655783 (C.D. Cal. 2007).................................................................. 15

*Berkic v. Chrichton,*
    761 F.2d 1289 (9th Cir. 1985) ...................................................................... 8, 10

*Bernal v. Paradigm Talent & Literary Agency,*
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ........................................................... 18

*Campbell v. Walt Disney,*
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) .............................................................7

*Cavalier v. Random House,*
    297 F.3d 815 (9th Cir. 2002) ........................................................................ 6, 7

*Christianson v. West Publ'g,*
    149 F.2d 202 (9th Cir. 1945) .............................................................................6

*DuckHole v. NBC Universal Media,*
    2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ....................................................7

*Eden Film Prod. v. Lockjaw,*
    2025 WL 1386018 (C.D. Cal. Apr. 25, 2025) ...................................................6

*Edwards v. Cinelou Films,*
    2016 WL 9686986 (C.D. Cal. June 22, 2016) ................................................. 11

*Evans v. McCoy-Harris,*
    2019 WL 4284504 (C.D. Cal. May 9, 2019) ................................................... 18

*Fillmore v. Blumhouse Prods.,*
    2017 WL 4708018 (C.D. Cal. July 7, 2017)................................................... 6, 7

*Fox Broad. v. Dish Network,*
    747 F.3d 1060 (9th Cir. 2014) ........................................................................ 21

*Funky Films v. Time Warner Ent.,*
    462 F.3d 1072 (9th Cir. 2006) ...................................................................... 3, 8

*Gallagher v. Lions Gate Ent.,*
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ......................................... 13, 19

iii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Gold Glove Prods. v. Handfield*,
    648 F. App'x 679 (9th Cir. 2016) ....................................................... 14

*Idema v. Dreamworks*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ........................................... 8, 9

*Kouf v. Walt Disney*,
    16 F.3d 1042 (9th Cir. 1994) ...............................................................7

*Luvdarts v. AT&T Mobility*,
    710 F.3d 1068 (9th Cir. 2013) ........................................................... 21

*Olson v. Nat'l Broad*,
    855 F.2d 1446 (9th Cir. 1988) ........................................................... 19

*Polychron v. Bezos*,
    2023 WL 6192743 (C.D. Cal. Aug. 14, 2023)....................................7

*Purohit v. Legend Pics.*,
    448 F. Supp. 3d 382 (D. Del. 2020)....................................................9

*Rentmeester v. Nike*,
    883 F.3d 1111 (9th Cir. 2018) ......................................................... 6, 7

*Schkeiban v. Cameron*,
    2012 WL 5636281 (C.D. Cal. Oct. 4, 2012).................................... 14

*Shame on You Prods. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ........................................ 7, 15

*Sid & Marty Krofft Television v. McDonald's*,
    562 F.2d 1157 (9th Cir. 1977) .............................................................6

*Silas v. Home Box Office*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) .............................. 14, 15, 20

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ...............................................................6

*Whitehead v. Netflix*,
    2022 WL 17342602, at *18 (N.D. Cal. Nov. 30, 2022) .................. 16

*Woodland v. Hill*,
    136 F.4th 1199 (9th Cir. 2025) ...........................................................6

iv

DEFENDANTS' MOTION TO DISMISS

*Zella v. E.W. Scripps*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................ 6, 9

**Rules**

L.R. 11-6.1 .................................................................................................... 23

**Other Authorities**

Plato's *Symposium* ...................................................................... 1, 8, 9, 14, 19

DEFENDANTS' MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's lawsuit is a tale of Hollywood fiction.  It ignores well-established law and common sense in its rush to assert claims before Defendants' film *Together* is even released in theaters.  Plaintiff claims that multiple defendants engaged in a nefarious scheme to copy Plaintiff's little-seen romantic comedy *Better Half (Or Metamorphosex)* ("*Better Half*") based on nothing more than conjecture and unprotectable ideas and elements that do not belong to anyone, including Plaintiff. This lawsuit not only disregards the reputations and efforts of artists that dedicated years to their film, but also falls short of what is required for Plaintiff to survive dismissal, because (1) the ideas allegedly infringed are not protectable, and (2) the works, when actually viewed, are not remotely similar, let alone substantially so.

Plaintiff seeks to claim ownership of an unprotectable concept that Plaintiff *admits* was borrowed from Plato's *Symposium*, written more than two thousand years ago.  In fact, Plaintiff's film *Better Half* expressly states after the opening credits that it is "[b]ased on the writings of Plato."  Ex. 2 at 10:10.[1]  In the intervening two thousand years, *many* creators have explored the premise of two people being physically conjoined in some manner.  Instead of acknowledging that other creators can and do explore this concept in different ways, Plaintiff wrongfully accuses Defendants of stealing this unprotectable idea.  That is not how copyright law works.  Plaintiff does not own this premise.  Neither do Defendants.

When evaluating two works at a motion to dismiss stage, the law requires the Court review the actual works rather than crediting Plaintiff's mischaracterizations and random similarities.  Here, reviewing the works disproves the listed similarities.

---

[1] While Plaintiff alleges copyright infringement of the *Better Half* screenplay, the complaint also alleges it made the screenplay into a film.  This motion refers to screenplay unless stated otherwise, as Plaintiff does not allege Defendants ever had access to the film.

DEFENDANTS' MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Beyond the works' unprotectable premise and the unprotectable elements that flow from that premise, the works are highly dissimilar. *Better Half* is an "opposites attract" slapstick rom-com about two strangers who, after a one-night stand, find themselves fused from thigh to naval—a feat later revealed to be the handiwork of the Greek god Zeus. Comedic hijinks ensue as the duo—who is ***conjoined***—navigates everyday life. Despite it all, they each learn to love themselves and others, and through that process, fall in love. Having learned their lessons, Zeus detaches them, and they choose to explore their new relationship.

*Together*, on the other hand, is a body horror film about a ***detached*** couple that is subjected to a mysterious force that, throughout the film, increasingly attracts their bodies to one another in gruesome fashion. The film is dark and suspenseful; it features a secret cult, a twist ending, and a graphic scene true to the genre where the couple saws through the skin on their arms. Despite Plaintiff's assertion that *Together* "stole virtually every unique aspect" of *Better Half*, even a cursory review of the works disproves this claim.

Beyond the unprotectable premise borrowed from Plato, Plaintiff identifies a series of cherry-picked similarities and gross mischaracterizations designed to mislead someone who has not seen either work. Under well-established Ninth Circuit law, courts can assess works that are properly before them at this stage of the case, and they can—and do—dismiss copyright cases where the works are not substantially similar as a matter of law. Such is the case here, where the purported similarities are abstract ideas, unprotectable elements, and mischaracterizations.[2]

*Together* will be released next week. At that point, Plaintiff and its counsel will have an opportunity to watch the film. Plaintiff will see that the two works are

---

[2] If necessary, Defendants will also establish that *Together*'s writer Michael Shanks wrote the initial screenplay for the film—which has the same plot, themes, characters, setting, and mood/pace—well before Plaintiff's alleged submission to WME. *See* Compl. ¶¶ 26-27.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  not alike in their protectable elements and hopefully dismiss this case.  But if not,

2  Defendants respectfully request the Court dismiss the complaint with prejudice.

3  ## II.  FACTUAL BACKGROUND

4  Because "[a] determination of substantial similarity requires a detailed

5  examination of the works themselves," *Funky Films v. Time Warner Ent.*, 462 F.3d

6  1072, 1075 (9th Cir. 2006), summaries of *Better Half* and *Together* follow.[3]

7  ### A.  *Better Half*

8  *Better Half* is an "opposites attract" romantic comedy set in Los Angeles.

9  Exs. 1-2.  The screenplay follows heartbroken professor Art Altman and fiercely

10  independent tattoo artist Daphne Dolph.  Ex. 1 at 2-5.  After Art prays to Zeus to

11  find his true love, the duo have a chance encounter at a bar and then a one-night

12  stand in Art's apartment.  *Id.* at 9-17.  The next morning, they discover they are

13  physically connected from groin to navel.  *Id.* at 17.  The divergent duo—Art, a

14  serial monogamist who loses himself in his relationships, and Daphne, emotionally

15  detached and immune to romantic feelings—is now inseparable.

16  Inescapably attached, they face a whirlwind of comedic antics.  For example,

17  when Art's ex-girlfriend Katherine stops by, he forces Daphne to hide their

18  situation by pretending to be showering.  *Id.* at 25-29.  Katherine yanks down the

19  shower curtain and loses her mind when she (wrongly) believes they are having sex.

20  *Id.*  Art seeks help from his senile childhood pediatrician, Dr. Carpenter.  *Id.* at 33-

21  36.  Totally unphased that the duo is attached, Carpenter tells them they are turning

22  into an octopus.  *Id.* at 35-36.  Meanwhile, Daphne tries to manage her ongoing

23  work obligations; when she is unable to reschedule a sit-down interview, Art hides

24  under the couch while Daphne answers the reporter's questions.  *Id.* at 41-44.

25

26

_____

27  [3] As *Better Half* and *Together* form the basis of Plaintiff's complaint and are

28  incorporated by reference, Defendants concurrently submit a copy of the screenplay and film for *Better Half*, and the film *Together*.  *See* Freeman Decl., Exs. 1-3.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Despite the circumstances, Art and Daphne bond.  In a scene of slapstick humor, Art and Daphne discover they can control the other's limbs, and begin hitting each other.  *Id.* at 58-60.  As Art and Daphne acclimate to everyday life, they accept being conjoined.  *Id.* at 86-89.  Daphne discovers how to connect with others while Art ironically develops his independence.  *Id.*  Lessons learned, Art and Daphne wake up one morning to find they are no longer attached—the work of Zeus.  *Id.* at 89.  In the end, they meet at a bar, now dating.  *Id.* at 93-94.

Plaintiff asserts that Defendants copied *Better Half* after it was sent to defendant WME in August 2020.  Compl. ¶¶ 26-27.

**B.    *Together***

*Together* is a supernatural "body horror" thriller that Michael Shanks wrote in 2019.  Shanks also directed the film, which was produced in 2024 and stars defendants Dave Franco and Alison Brie, who are married in real life.  *Together* explores a long-time couple's relationship following an unknowing encounter with a supernatural substance that progressively attracts their bodies to one another.

*Together* opens in a forest where two dogs drink from an ominous hole in a cave.  Ex. 3 at 0:52.  The dogs begin behaving erratically, and morph into a single deformed creature.  *Id.* at 4:55.  The movie cuts to Tim and Millie in their city apartment, preparing to move to the countryside for Millie's new job.  *Id.* at 5:03.  As they toast goodbye, Millie proposes to Tim, who reluctantly accepts.  *Id.* at 8:38.

The film flashes forward as the couple moves into their cabin in the woods.  *Id.* at 12:02.  They fall into the same hole from the opening scene.  *Id.* at 20:33.  Tim tells Millie that when his father died, his mother continued living with his rotting corpse.  *Id.* at 26:20.  Out of water, he drinks from the hole in the ground.  *Id.* at 23:42.  The next morning, the couple wakes to discover the skin on their legs is stuck together.  *Id.* at 30:05.  Chalking it up to mildew, they painfully peel their legs apart, and return home.  *Id.*

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

What follows is a series of increasingly gruesome incidents as Tim and Millie's bodies try to unite as a result of some mysterious force. For example, when Millie drives into town, Tim collapses in the shower. *Id.* at 33:25. At every turn she makes in her car, Tim's body violently mirrors the vehicle's movements, whipping him from wall to wall. *Id.* Later, Millie awakens to find her hair coiled in Tim's throat. *Id.* at 43:46. The next morning, Millie drops Tim at the train station. *Id.* at 45:50. Separated for too long, Tim enters a trance and stumbles back to Millie, where they have sex in a bathroom stall at her school. *Id.* at 50:33. After realizing they are stuck together, Millie brutally pulls Tim out of her to avoid getting caught. *Id.* at 53:03.

The force attracting the couple's bodies worsens at night. *Id.* at 1:04:34. Though they try to sleep apart, their bodies drag toward one another against their will and their arms begin to fuse. *Id.* at 1:09:42. Bones crack, with agonizing pain. *Id.* at 1:11:49. The couple takes muscle relaxants, which temporarily help. *Id.* at 1:12:20. Stirring awake the next morning, Tim finds Millie has tied him to a chair. *Id.* at 1:14:25. And true to the body horror genre, Millie uses an electric saw to cut through the skin connecting them. *Id.* at 1:15:45.

Needing medical attention, Millie runs to her neighbor Jaime's house to retrieve her car keys. *Id.* at 1:17:15. Millie arrives at Jaime's cabin, where she sees a wedding video of two men each vaguely resembling Jaime. *Id.* at 1:18:10. The men marry at the cave site, then morph together into one being: Jaime. *Id.* at 1:20:43. Jaime reveals himself to be the leader of a cult that worships the supernatural process through which couples become one body. *Id.* at 1:22:04.

After fighting the force for the entirety of the film, Millie and Tim succumb, allowing their bodies to merge. *Id.* at 1:31:20. The Spice Girls song "2 Become 1" fittingly plays as the two literally become one person. *Id.* at 1:31:30. At the end, the audience sees someone answer the front door of Tim and Millie's house: a single androgenous person—a combination of Tim and Millie. *Id.* at 1:36:01.

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### III.   PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS

To avoid dismissal of its copyright infringement claim, Plaintiff must demonstrate that the works' protected *expression* is substantially similar.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  It cannot.

### A.   Substantial Similarity May Be Decided on a Motion to Dismiss

It is well established that when the works at issue in a copyright case "are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Publ'g*, 149 F.2d 202, 203 (9th Cir. 1945); *Woodland v. Hill*, 136 F.4th 1199, 1210-1217 (9th Cir. 2025) (affirming dismissal for lack of substantial similarity as a matter of law); *Rentmeester v. Nike*, 883 F.3d 1111 (9th Cir. 2018) (same).  Courts routinely analyze substantial similarity on motions to dismiss, and have long declined to subject defendants to burdensome discovery where the works are not substantially similar as a matter of law.  *See Eden Film Prod. v. Lockjaw*, 2025 WL 1386018, at *4-7 (C.D. Cal. Apr. 25, 2025); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *2 (C.D. Cal. July 7, 2017).  With both works now before the Court, it may decide substantial similarity on Defendants' motion to dismiss.

### B.   The Court Must Disregard Unprotectable Elements

"[I]t is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." *Sid & Marty Krofft Television v. McDonald's*, 562 F.2d 1157, 1163 (9th Cir. 1977).  Accordingly, to assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which "focuses on 'articulable similarities'" between the works. *Zella v. E.W. Scripps*, 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007).  "[A] court must filter out and disregard the non-protectable elements." *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002).

Non-protectable elements that courts must filter out include ideas and *scenes a faire*, or elements that flow naturally from a basic premise.  *Id.* at 823.  For

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

example, in *Benay v. Warner Bros.*, the Ninth Circuit filtered alleged similarities that flowed from the unprotectable "plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" as *scenes a faire*.  607 F.3d 620, 625 (9th Cir. 2010).  Such filtered elements included "meetings with the Emperor and numerous battle scenes," and the fact "in both works the American protagonist is spiritually transformed by his experiences in Japan." *Id.*

Courts also filter out generic or common elements to films, television series, and specific genres before analyzing substantial similarity. *See Fillmore*, 2017 WL 4708018, at *3 (generic literary elements like "[d]ream sequences" and "[b]ringing the dead back to life" were unprotectable "common elements"); *DuckHole v. NBC Universal Media*, 2013 WL 5797279, at *4, *8-9 (C.D. Cal. Sept. 6, 2013) ("sexual tension" and "constant insults" between characters are "common to sitcoms" and unprotectable); *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1159 (C.D. Cal. 2015) ("outdoor chase on wheels" generic).

Courts must also filter out preexisting elements that are not in the public domain or otherwise are not original to the plaintiff's work. *See Rentmeester*, 888 F.3d at 1119 ("public domain" elements not copyrightable); *Polychron v. Bezos*, 2023 WL 6192743, at *8 (C.D. Cal. Aug. 14, 2023) (filtering out characters and plot points attributable to preexisting work).

## C.    The Works' Protected Expression Is Not Substantially Similar

After unprotectable elements are filtered out, courts compare the objective "expressive elements" in the works' plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. *Kouf v. Walt Disney*, 16 F.3d 1042, 1045 (9th Cir. 1994) (no substantial similarity between works featuring a method of shrinking humans and depicting "kids fighting insurmountable dangers").  To assess similarity, the law requires a review of the actual works rather than crediting a plaintiff's characterizations. *See Campbell v. Walt Disney*, 718 F. Supp. 2d 1108,

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1113 (N.D. Cal. 2010) (rejecting allegations of similarity "contradicted by the two stories themselves"). Moreover, courts afford little weight to lists of "random similarities." *Idema v. Dreamworks*, 162 F. Supp. 2d 1129, 1180 (C.D. Cal. 2001). After filtering out the unprotectable elements and reviewing the works, *Better Half* and *Together* are not similar—let alone *substantially* similar—in their protected elements.

## 1.    The Plot and Sequence of Events Are Not Similar

As "general plot ideas are not protected by copyright law," the extrinsic test compares "the actual concrete elements that make up the total sequence of events and the relationship between the major characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (no protection where idea of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and a "young professional" who exposes the criminals was expressed differently in each work). The Ninth Circuit frequently rejects substantial similarity claims where the works' similarities are "develop[ed] quite differently." *Funky Films*, 462 F.3d at 1077-1078. That is the case here.

### a.    The Alleged Similarities are Unprotectable

Many of the purported similarities between the works' plots are either unprotectable concepts or *scenes a faire*.

For example, the idea of portraying two people whose bodies are fused together is an unprotectable premise that has appeared in many works. Plaintiff concedes this premise was borrowed from Plato's *Symposium*. Compl. ¶¶ 39-40. In fact, the *Better Half* film *expressly announces* the work is "[b]ased on the writings of Plato." Ex. 2 at 10:10. *Better Half's* screenplay describes (and the film depicts) a famous speech by Aristophanes about an ancient myth: that in primal times, people had doubled bodies, and that Zeus separated them with lightning so that each

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

half would need to seek out the other.[4]  No one owns this centuries-old concept.
*See Idema*, 162 F. Supp. 2d at 1180 (court must filter out "elements borrowed from another author" or from the "public domain"); *Purohit v. Legend Pics.*, 448 F. Supp. 3d 382, 388 (D. Del. 2020) (no substantial similarity where both works were premised on centuries-old unprotectable character taken from "folklore").

Indeed, variations of this generic premise are common to a number of creative works, including many which predate *Better Half*.[5]  For example, the short film *A Folded Ocean* (2023) features a couple whose bodies become conjoined.[6] That film opens with a loving couple in their apartment.  Initially separated, they awake one morning to find themselves connected.  They unsuccessfully seek medical attention, and struggle to navigate everyday life.  They ultimately are able to disconnect, ending with the couple separated but having emotionally evolved. Similarly, the 2021 horror film *Two*[7] involves a couple who wakes up and discovers their abdomens are stitched together against their will, while the 2010 music video for the *Klaxtons'* song *Twin Flames*[8] depicts naked couples who are initially separate but fuse together.[9]

In addition, many supposed similarities naturally flow from the unprotectable premise of two people stuck together in some manner—*i.e.*, unprotectable *scenes a faire*.  For example, Plaintiff alleges the works are similar because "main characters struggle to navigate daily life as their physical attachment progresses" and

---

[4] *See Symposium*, WIKIPEDIA, https://en.wikipedia.org/wiki/Symposium_(Plato); https://archive.org/details/banquetofplato00platrich/page/n6/mode/1up.

[5] At the motion to dismiss stage, the Court may judicially notice generic elements common to creative works like these, including "generic elements of creative works." *Zella*, 529 F. Supp. 2d at 1129 (collecting cases).

[6] *See A Folded Ocean*, https://vimeo.com/889109905.

[7] *See Two*, https://www.imdb.com/title/tt12358104/.

[8] *See Twin Flames*, https://vimeo.com/108977755.

[9] *See also Stuck on You* (2003) (rom-com about conjoined brothers), https://www.imdb.com/title/tt0338466/.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"desperately search for ways to detach" including "medical intervention." Compl. ¶ 41. But those are concepts that naturally flow from a story about two people that are conjoined against their will. Similarly, Plaintiff contends both works involve characters "hiding their attachment from their co-workers and the outside world" and who "search for ways to detach [and] ultimately accept[] their fate," but again, these are characteristics that naturally flow from two people suddenly finding themselves attached. *Id.* ¶ 48. The alleged similarities flowing from the unprotectable concept of two people who become attached must be disregarded.

### b.    The Plots and Sequences of Events Are Not Alike

After filtering out the unprotectable elements, *Better Half* and *Together* lack similarity in their "actual concrete" plot elements. *Berkic*, 761 F.2d at 1293. *Better Half* is a whimsical rom-com in which two people wake up from a one-night stand *conjoined*, and humorously try to detach but fall in love; *Together* is a horror movie about a *detached* long-term couple battling a supernatural force trying to fuse them together. Beyond the concepts and *scenes a faire* described above, the remaining alleged similarities are mischaracterizations or overgeneralizations designed to make the works appear similar when they are not.

Addressing the works' supposedly similar premise, Plaintiff contends that both works are spawned by a "supernatural force." Compl. ¶ 54. But this is a gross overgeneralization that could describe countless works of fiction. Indeed, *all* stories with other-worldly elements necessarily feature some sort of supernatural force. Regardless, the ways in which the works' protagonists encounter supernatural elements could not be further apart. The duo in *Better Half* becomes conjoined following a one-night stand—after Zeus answers Art's prayer to find love. Ex. 1 at 17. Meanwhile in *Together*, Tim drinks an unknown liquid from a mysterious hole, which over time causes his and Millie's bodies to attract. Ex. 3 at 23:42.

Similarly, Plaintiff alleges that both works feature early scenes where characters "awaken after a rainstorm" to find themselves "fused" (Compl. ¶¶ 39,

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

54), but those scenes are nothing alike.  In *Better Half*, the duo discovers they are conjoined at the torso after having sex in Art's apartment—and remain connected until the end.  Ex. 1 at 17-89.  Meanwhile, in *Together*, Tim and Millie wake up after having been stranded in a cave, painfully peel their legs apart, and leave detached.  Ex. 3 at 30:05.  Plaintiff also states both scenes feature "rainstorms" and "water sources," but those too are unprotectable elements taken out of context that, as the complaint admits, are expressed very differently.  *See Edwards v. Cinelou Films*, 2016 WL 9686986, at *4 (C.D. Cal. June 22, 2016) ("commonly-used artistic devices" included scenes shot "in the rain for dramatic effect").

As another example, Plaintiff alleges the protagonists in both works "begin to control each other's body parts" and "experience seizure-like movements."  Compl. ¶¶ 41, 56, 60.  Again, a mischaracterization.  The characters in *Better Half* begin twitching, and in a slapstick scene, realize they can control the other's limbs while *attached*.  Ex. 1 at 58-60.  Daphne forces Art to eat his boogers; he scratches her chin.  *Id.*  This is quite different from *Together*, where Tim's body thrashes across the shower mirroring Millie's movements while driving, or the catatonia he experiences when the two are *separated*.  Ex. 3 at 33:25; 48:06.

Plaintiff also alleges that both works feature bathroom scenes that are "strikingly similar" and "nearly identical" (Compl. ¶ 57), but besides being set in bathrooms, these scenes have virtually nothing in common.  *Better Half*'s lighthearted bathroom scene is set in Art's apartment, with Art and Daphne hiding under a shower curtain to avoid being seen by Art's ex.  Ex. 1 at 26-30.  Desperately grabbing all sorts of items—from shampoo to a loofah—the duo is unable to disconnect, and is ultimately discovered in the tub.  *Id.*  Far from a sex scene, it fits squarely within the film's slapstick subgenre.  By contrast, the nail-biting bathroom scene in *Together* is not comedic at all.  It features Tim showing up at Millie's work in a trance.  They have sex in a school stall.  After becoming stuck, Millie forcefully tears Tim out of her to avoid getting caught.  Ex. 3 at 53:03.

11

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

As to the works' endings, Plaintiff erroneously claims both works "conclude the same way," with characters "ultimately accepting their fate of being fused together." Compl. ¶¶ 42, 48, 62. In reality, *Better Half* sees Art and Daphne admit their attraction, only to wake up and discover they are no longer conjoined after Zeus separates them. Ex. 1 at 86-90. In *Together*, Tim and Millie surrender themselves and graphically merge into one, androgynous human. Ex. 3 at 1:31:20.

Plaintiff also alleges that both works end with the couple pulling "the same exact Spice Girls record, *Spiceworld*." Compl. ¶¶ 42, 62. That too is inaccurate. *Together* does not reference *Spiceworld*, which does not appear anywhere in the film. Both works do reference the Spice Girls, but in totally different ways. *Better Half*'s Art and Daphne are both pop-culture buffs who repeatedly reference various celebrities and artistic works relevant to their condition—for example, jokes about *The Human Centipede* and the Spice Girls' song "2 Become 1," both fitting references for a work about two people joined as one. Ex. 1 at 25; *id.* at 59. Towards the end of the film, Daphne sees a copy of *Spiceworld* in passing while searching through Art's storage. *Id.* at 83. This is nothing like *Together*, where Millie tells a friend a story when Tim gifted her the *Spice* album (not *Spiceworld*) on their second date, a romantic gesture that Millie laments occurred more than ten years earlier. In a bookend to Millie's earlier story, the song "2 Become 1"—from *Spice*, not *Spiceworld*—plays as the couple literally becomes one body at the end of the film. Ex. 3 at 1:31:30. No one may monopolize references to the Spice Girls or "2 Become 1" in a work, especially in a work that is literally about that topic.

Plaintiff's complaint otherwise offers a series of cherry-picked similarities that are immaterial to the plot, overgeneralized, or taken completely out of context.

- The complaint asserts that both works feature characters who try to detach "using a chainsaw … and have a similar fight about going to the hospital." Compl. ¶¶ 41, 61. These are unprotectable elements flowing from works about two people connected against their will. More than that, the scenes are not similar. At

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the end of *Better Half*, Art's senile pediatrician comically appears with a chainsaw

after the duo is separated.  No saw is used.  Ex. 1 at 90.  Meanwhile, in one of

*Together*'s more gruesome scenes before the climax, Millie uses an electric saw to

slice through her and Tim's arms.  Ex. 3 at 1:15:45.

- Plaintiff's generic reference to the two works referencing hospitals is

just as groundless.  Compl. ¶¶ 61.  *Better Half* sees the duo go to the hospital where

their doctor cannot treat them due to "bad insurance," while the couple in *Together*

never makes it to a hospital because Millie lost her keys.  Ex. 1 at 75-77; Ex. 3 at

1:17:15.

- According to Plaintiff, both works include "awkward marriage

proposals," but the complaint then admits the proposals are nothing alike.  Compl.

¶ 52.  *Better Half* references Art's many *offscreen* proposals.  Ex. 1 at 6, 53-54.

*Together* features Millie's on-screen proposal to Tim, who begrudgingly accepts to

avoid public embarrassment.  Ex. 3 at 8:38.  And unlike *Better Half*, Millie's early

proposal in *Together* is bookended at the film's end when Tim proposes to Millie,

signifying the couple's reconciliation.  *Id.* at 1:27:37.

- The complaint also alleges that characters "desperately try to make it in

time for their pivotal career-defining moment but [are] unable … due to their

physical attachment."  Compl. ¶ 59.  Again, this is misleading.  In *Better Half*,

Daphne cannot meet with a reporter at a tattoo shop while attached to Art, so she

conducts the interview in Art's apartment while he hides in the couch.  Ex. 1 at 41-

48.  By contrast, Tim in *Together* intends to go to the city for a gig, but never makes

it past the train station because he enters a trance leading him back to Millie.  Ex. 3

at 47:10.

- Plaintiff contends both works use similar "visual motifs" to

foreshadow later events.  Compl. ¶¶ 50, 53, 58.  But the idea of foreshadowing is a

common literary technique that appears in countless works of fiction.  *See*

*Gallagher v. Lions Gate Ent.*, 2015 WL 12481504, at *4 (C.D. Cal. Sept. 11, 2015)

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

("foreshadowing" danger is "commonplace" and must be filtered out). Regardless, the ways each work uses foreshadowing are distinct. Compl. ¶ 50. *Better Half* opens with a comedic scene where Art lectures on Plato's *Symposium*, while *Together* ominously depicts two dogs consuming a strange fluid and becoming conjoined. Plaintiff then contends the works "call[] back" to these opening scenes by using imagery of different creatures. *Id.* ¶ 58. But "call-backs" are commonplace literary devices, and here the alleged "call-backs" are nothing alike. Finally, Plaintiff contends both works use "strikingly similar visual motif[s] of rodents" to hint at characters' fates. *Id.* ¶ 53. But *Better Half* features a still-alive mouse caught in a trap in Art's apartment after Zeus connects them, while *Together* feature a rotting rat king early in the film.

After filtering out the unprotectable premise and examining the works themselves rather than relying on Plaintiff's mischaracterizations, the plots are not remotely close to being substantially similar.

### 2. The Themes Are Not Similar

The themes of *Better Half* and *Together* are likewise different. "A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise." *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016); *Gold Glove Prods. v. Handfield*, 648 F. App'x 679, 680-681 (9th Cir. 2016) ("shared themes" of father-daughter reconciliation and pitting old school ways against new ones are "commonplace" and thus not protectable).

Plaintiff alleges that both works share themes of "codependency, isolation, autonomy, fear of becoming one's parents, lack of accomplishment in career, and fear of commitment," Compl. ¶ 43, but these are all incredibly abstract concepts that appear in numerous works, and do not belong to Plaintiff or anyone else. *See Schkeiban v. Cameron*, 2012 WL 5636281, at *2 (C.D. Cal. Oct. 4, 2012) ("general similarities between themes, such as saving the world or battles between good and

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

evil are not subject to copyright."). Further, themes like codependency, isolation, and autonomy naturally flow from the basic premise of two people who find themselves attached, and the others are generic to stories exploring relationships (especially rom-coms like *Better Half*).

Even if these themes were somehow protectable, Plaintiff ignores how differently they are expressed. *Better Half* is a standard romantic comedy with farcical elements, and *Together* is a dark, suspenseful blend of horror and mystery. For example, while Plaintiff claims both works involve a fear of becoming one's parents, that common theme is rooted in very different facts. In *Better Half*, Daphne does not develop intimate relationships because her domineering father forced her mother to give up her dreams. Ex. 1 at 63, 78-82. By contrast, in *Together*, Tim is afraid to fully commit to Millie because as a boy he witnessed his mother go crazy when she lost his father, living alongside his corpse. Ex. 3 at 26:20. Overall, the works' themes are not substantially similar.

### 3. The Characters Are Not Similar

The works themselves disprove Plaintiff's contention that their characters are substantially similar. "In determining whether characters are similar, a court looks at the totality of the attributes and traits [and] the extent to which the defendants' characters capture the total concept and feel of the figures in the plaintiff's work." *Shame on You Prods.*, 120 F. Supp. 3d at 1164. Courts also analyze characters' "noticeable" (*Silas*, 201 F. Supp. 3d at 1177) or "material" (*Benjamin v. Walt Disney*, 2007 WL 1655783, at *6 (C.D. Cal. 2007)) differences.

Plaintiff's alleged similarities between the couples all are generic elements that ignore almost everything about them. Compl. ¶¶ 45-49. For example, Plaintiff claims "[b]oth works focus the majority of the screen time on the development and interaction of Character A and Character B with other characters relegated to secondary or supporting roles." *Id.* ¶ 49. But this structure of focusing on two main characters is ubiquitous in creative works. Similarly, Plaintiff contends that both

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

characters appear to be in their thirties (*id.* ¶ 46), but "ages … are not protectable." *Whitehead v. Netflix*, 2022 WL 17342602, at *18 (N.D. Cal. Nov. 30, 2022) (granting motion to dismiss; no substantial similarities between coming-of-age story involving black teenager and 1990s-style sitcom about black family).  Even if these character attributes were protectable, they are expressed differently in each work.

### a.    Art (*Better Half*) and Millie (*Together*)

Plaintiff's descriptions of Art and Millie are superficial to the point of failing to identify any meaningful similarities.  Plaintiff claims the characters—which the complaint refers to as "Character A"—are commitment-ready protagonists who are "eager to propose," "represent[] the paradigmatic codependent partner," and are "teacher[s]."  Compl. ¶¶ 45, 47, 51.  In truth, Art and Millie are not alike at all.

*Better Half's* Art is a nerdy male professor with dreams of being an archeologist.  Having experienced a series of failed relationships, he subjugates his interests to those of his girlfriends.  In contrast, *Together*'s Millie is a female primary school teacher who has been with her fiancé for more than a decade.  Unlike Art, Millie dominates her relationship.  Their character arcs are also totally different.  By being connected with Daphne, *Better Half*'s Art improbably becomes more independent, and ultimately realizes he does not need to be in a romantic relationship to be happy.  He rebuffs his ex and makes plans to date Daphne.  Millie, by contrast, disbelieves Tim when he says something is wrong with him, and in the end, a remorseful Millie merges with Tim into one person.  Art and Millie are nothing alike, and certainly are not substantially similar.

### b.    Daphne (*Better Half*) and Tim (*Together*)

Forced to compare the remaining two protagonists, Daphne and Tim—which the complaint refers to as "Character B"—Plaintiff fares no better.  Compl. ¶¶ 45-47, 51, 55.  According to Plaintiff, Daphne and Tim are both "commitment-phobic and fixated on their careers," have "parental trauma" after "witness[ing] the unhealthy consequences of enmeshed relationships," and are "punk artist[s] looking

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  for their big break." *Id.* These are obvious cherry-picked generalities designed to

2  make two unalike characters appear similar.

3      Daphne in *Better Half* is an Asian female tattoo artist who treats sexual

4  partners as expendable. Prioritizing her career, she is emotionally detached,

5  sarcastic, and structured (categorizing lovers by days of the week). As a child,

6  Daphne had a curved spine, which led to surgeries, but also to her tattooing as an

7  act of self-empowerment. She has a strained relationship with her judgmental and

8  controlling father. Daphne is nothing like *Together*'s Tim, a white male aspiring

9  musician who put his career on hold for his fiancée's. Tim experiences a series of

10  injuries including being violently hurled around the shower and choking as his body

11  slowly succumbs to the substance. Unlike Daphne, Tim's "parental trauma" is

12  rooted in his father's death, which caused his mother's breakdown.

13      Daphne and Tim's arcs are nothing alike. While attached to Art, Daphne

14  transforms from fiercely independent and emotionally detached to someone who

15  values connection and emotional intimacy. She ultimately detaches from him, but

16  chooses to date him—her first real relationship. Tim, meanwhile, goes from being

17  subordinate to controlling the couple's fate. Like Art and Millie, Daphne and Tim

18  are not remotely similar.

19          c.    **Other Characters**

20      Plaintiff contends that "[b]oth works focus the majority of the screen time"

21  on the two main characters, "with other characters relegated to secondary or

22  supporting roles." Compl. ¶ 49. Such is the case for millions of fictional works.

23  But this contention conveniently allows Plaintiff to ignore altogether each work's

24  important, and extremely different, secondary characters. In *Better Half*, Art's ex

25  plays a recurring role, as do his best friend Paul and Dr. Carpenter. None of these

26  are analogous to *Together*'s secondary characters, like Jaime, the schoolteacher and

27  cultist merged from two men.

28

**Davis Wright Tremaine** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS

### 4.    The Settings Are Not Similar

The settings of *Better Half* and *Together* are almost entirely different.  The former takes place in Los Angeles (or as filmed, an unnamed desert town), and is largely set in Art's apartment (in the film, a garage).  Other locations include the local bar where Art and Daphne meet, a tattoo parlor, a hospital, and Daphne's parents' house.  In *Together*, the main characters move into a cabin in the woods and get stuck in an underground cave.  Other locations include the elementary school where Millie works, the train station, and a neighbor's house.

Plaintiff focuses on generalities, claiming both are "set in the modern-day" and "take place inside the home."  Compl. ¶ 63.  These are not protectable similarities; countless works take place in modern times and are set inside a "home."  *See Evans v. McCoy-Harris*, 2019 WL 4284504, at *5 (C.D. Cal. May 9, 2019) (no similar setting despite both works set "in the present day"); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1071 (C.D. Cal. 2010) ("commonplace settings such as houses" not protectable).  Regardless, the characters' homes are nothing alike.  Ex. 2 at 13:58; Ex. 3 at 12:40.

Plaintiff also alleges that both works "include scenes at the school where Character A works."  Compl. ¶ 64.  Art works at a community college and those scenes are confined to the lecture hall.  Millie is a primary school teacher in a rural town, and *Together* includes scenes in the school's bathroom, classroom, teacher's lounge, and exterior.  Finally, Plaintiff contends that both works feature a scene at a doctor's office where the doctor is unable to diagnose their attachment.  Compl. ¶ 65.  But these locations are not alike, and Plaintiff's description is inaccurate.  Towards the end of *Better Half*, connected Art and Daphne go to a hospital, where a sarcastic doctor does not cure them.  Meanwhile, the beginning of *Together* has Tim going to a rural doctor's office alone, where he is prescribed muscle relaxants.

The works do not share a similar setting, which again highlights their dispositive differences.

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 5.    The Dialogue Is Not Similar

For a plaintiff to demonstrate substantial similarity of dialogue, it must show "extended similarity of dialogue." *Olson v. Nat'l Broad*, 855 F.2d 1446, 1450 (9th Cir. 1988); *Gallagher*, 2015 WL 12481504, at *10 (three instances of similar dialogue not "extended similarity").

The complaint identifies a series of discussions and references, but does not identify any supposedly similar dialogue. Compl. ¶¶ 69-74. For example, Plaintiff claims both works discuss Plato's *Symposium* in a "near verbatim way" simply because they reference the popular myth about how humans came to be. *Id.* ¶¶ 40, 69. But as stated above, this is a preexisting work that lives in the public domain; the actual dialogue is not alike. Ex. 1 at 2-3, 84-85; Ex. 3 at 59:20.

Plaintiff next alleges that in both works, the main characters have a "similar" debate about whether to detach themselves via chainsaw. Compl. ¶ 70. Again, untrue. In *Better Half*, Dr. Carpenter arrives with a chainsaw after the characters are separated, and comedically exclaims, "You beat me to it." Ex. 1 at 90. In *Together*, by contrast, Millie painfully saws her and Tim's arms apart. Ex. 3 at 1:15:45. Plaintiff also alleges that both works feature a scene where characters fight about going to the hospital. Compl. ¶ 71. Besides being *scenes a faire* to a work where two characters are inexplicably connected, the works contain no similar dialogue: in *Better Half*, the characters agree to (and do) go to the hospital, while in *Together*, Tim and Millie cannot get to the hospital because Millie's keys are missing. Ex. 1 at 75-77; Ex. 3 at 1:17:15.

Plaintiff's litany of remaining purported similarities in dialogue fare no better.

- Plaintiff alleges that in both works, the male character makes jokes about a doctor's age, but this is misleading. Compl. ¶ 72. In *Better Half*, Daphne (not Art) says that Art's childhood pediatrician (in the film, his landlord, a retired doctor) is senile. By comparison, in *Together*, Tim sees a young doctor and

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

questions the doctor's advice due to his age; there is no joke. Ex. 1 at 37, 55; Ex. 3 at 35:25.

- Plaintiff asserts that both works feature best friends who question the main character's relationship, Compl. ¶ 73, but a secondary character questioning another's relationship is common to many works. Tellingly, Plaintiff fails to identify any conversations with similar dialogue—because they all feature different characters in different scenes at different times discussing different topics. Ex. 1 at 6-7; Ex. 3 at 48:41.

- Finally, Plaintiff claims that both works reference the Spice Girls throughout, including the song "2 Become 1." Compl. ¶ 74. But no one owns generic references to celebrities or songs when the dialogue is different. As described above, *Better Half* references the Spice Girls and "2 Become 1" in Art's passing pop culture references, while in *Together*, "2 Become 1" plays as the couple literally becomes one. The actual dialogue is not alike at all.

### 6. The Moods and Paces Are Not Similar

The works' moods and paces are also different. As to mood, while Plaintiff claims that both works are "character-driven works with romantic comedy and horror elements" (Compl. ¶ 66), it provides no support for this. Moreover, a "general mood that flows naturally from unprotectable basic plot premises is not entitled to protection." *Silas*, 201 F. Supp. 3d at 1180. Nor are the moods the same. *Better Half* is lighthearted, humorous, and incorporates elements from romantic and screwball comedies, all set to an whimsical score. *Together*, by contrast, is a sinister horror film with psychologically and physically grotesque scenes and a foreboding and tense score. Finally, Plaintiff alleges both works employ "cartoonish aesthetics," without explaining what this means or giving any examples. *Id.* ¶ 67. While the *Better Half* film has animated interludes with Zeus providing meta-commentary on Art and Daphne's exploits (Ex. 2 at 26:08; 1:10:08), *Together*

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS

1  does not include any cartoons or similar visuals, and features realistic body horror

2  true to the genre.

3      As to pace, the works are also not alike.  *Better Half* proceeds in a linear

4  fashion, has montages, and is told over the course of a few days without flashbacks.

5  *Together*, meanwhile, takes place over a few weeks as the main characters move to

6  their new home, and features a suspenseful prelude, flashbacks, and nightmares that

7  seem real until the sleeping character wakes up.  Plaintiff contends that both works

8  are "powered by a sense of urgency" and "punctuated by quippy jokes," but

9  tellingly, offers no examples as to either.  *Id.* ¶ 68.  Regardless, a sense of urgency

10 naturally flows from a work about two people joined against their will.  Meanwhile,

11 quippy jokes do not belong to Plaintiff or anyone else, especially when the jokes are

12 not alike.  This is likewise insufficient to show substantial similarity.

13 **IV.   PLAINTIFF'S SECONDARY LIABILITY ALLEGATIONS ARE**

14 **INSUFFICIENT**

15     While Plaintiff brings a single cause of action for copyright infringement, it

16 alleges in one sentence that "Defendants have directly, contributorily, and/or

17 vicariously infringed StudioFest's copyrighted work."  Compl. ¶ 83.  Because

18 Plaintiff's claim for direct infringement fails, its claims for contributory and

19 vicarious infringement also fail.  *See Fox Broad. v. Dish Network*, 747 F.3d 1060,

20 1068 (9th Cir. 2014) ("Secondary liability for copyright infringement does not exist

21 in the absence of direct infringement by a third party.").  Even if not, a threadbare

22 and conclusory allegation of secondary infringement is insufficient to state a valid

23 claim.  *See Luvdarts v. AT&T Mobility*, 710 F.3d 1068, 1072 (9th Cir. 2013).

24 **V.   CONCLUSION**

25     *Better Half* and *Together* are not substantially similar as a matter of law.

26 After filtering out unprotectable elements, a review of the two works demonstrates

27 that they are dispositively different.  Plaintiff's intentionally misleading allegations

28

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS

1  of similarity are insufficient to survive dismissal.  As a result, Defendants

2  respectfully request that the Court dismiss the complaint with prejudice.

3

4  DATED: July 25, 2025                    DAVIS WRIGHT TREMAINE LLP
                                           NICOLAS A. JAMPOL
5                                          CYDNEY SWOFFORD FREEMAN
                                           ADRIAN F. VALLENS
6
                                           By: /s/     Nicolas A. Jampol
7                                                      Nicolas A. Jampol

8                                          Attorneys for Defendants
                                           NEON RATED, LLC; WILLIAM
9                                          MORRIS ENDEAVOR
                                           ENTERTAINMENT, LLC; MICHAEL
10                                         SHANKS; ALISON BRIE; and
                                           DAVE FRANCO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants certifies that this Memorandum contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

By: /s/     Nicolas A. Jampol
                    Nicolas A. Jampol

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS