NICOLAS A. JAMPOL (State Bar No. 244867)
 nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
 cydneyfreeman@dwt.com
ADRIAN F. VALLENS (State Bar No. 332013)
 adrianvallens@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
NEON RATED, LLC; WILLIAM MORRIS
ENDEAVOR ENTERTAINMENT, LLC;
MICHAEL SHANKS; ALISON BRIE; and
DAVE FRANCO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDIOFEST LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, a California limited liability company; DAVE FRANCO, an individual; ALISON BRIE, an individual; MICHAEL SHANKS, an individual; NEON RATED, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-04294-JLS-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:     November 21, 2025<br>Time:     10:30 a.m.<br>Dept.:    8A |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 21, 2025 at 10:30 a.m., or as soon as may be heard in Courtroom 8A of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Neon Rated, LLC, William Morris Endeavor Entertainment, LLC, Michael Shanks, Alison Brie, and Dave Franco (collectively, "Defendants"), will and hereby move this Court for an order dismissing with prejudice the First Amended Complaint ("FAC") filed by plaintiff StudioFest LLC ("Plaintiff").

The motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's FAC fails to state a valid claim for copyright infringement because there is no substantial similarity of protected expression between Defendants' film *Together* and Plaintiff's screenplay *Better Half (Or Metamorphosex)* ("*Better Half*"). The vast majority of alleged similarities between the works are unprotectable elements, including an unprotectable premise that Plaintiff admits comes from Greek mythology and has been explored in many other works. Plaintiff mischaracterizes the remaining alleged similarities to make them seem more similar than they are.

The motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Adrian Vallens ("Vallens Decl."), the works at issue (Dkts. 21-2; 21-4), and all other matters which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 10, 2025, as set forth in more detail in the Vallens Declaration.

DATED: September 17, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
ADRIAN F. VALLENS

By: /s/      Nicolas A. Jampol
              Nicolas A. Jampol

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND........................................................................ 2

      A.   *Better Half* ........................................................................................ 2

      B.   *Together*............................................................................................. 3

III.  PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS....... 5

      A.   Substantial Similarity May Be Decided on a Motion to Dismiss ........ 5

      B.   The Court Must Disregard Unprotectable Elements............................ 5

      C.   The Works' Protected Expression Is Not Substantially Similar .......... 6

           1.   The Plots and Sequences of Events Are Not Similar................ 7

                a.   The Alleged Similarities are Unprotectable ................... 7

                b.   The Plots and Sequences of Events Are Not Alike ......... 9

           2.   The Themes Are Not Similar.................................................... 13

           3.   The Characters Are Not Similar................................................ 14

                a.   Art (*Better Half*) and Tim *(Together)*............................ 15

                b.   Daphne (*Better Half*) and Millie (*Together*).................. 16

                c.   Paul (*Better Half*) and *Jamie* (*Together*) ....................... 17

                d.   Daphne's Parents (*Better Half*) and Tim's Parents
                     (*Together*) ...................................................................... 18

           4.   The Settings Are Not Similar.................................................... 18

           5.   The Dialogue Is Not Similar .................................................... 19

           6.   The Moods and Paces Are Not Similar..................................... 20

IV.   PLAINTIFF'S SELECTION-AND-ARRANGEMENT THEORY
      FAILS ...................................................................................................... 21

V.    PLAINTIFF'S SECONDARY LIABILITY ALLEGATIONS FAIL.......... 22

VI.   CONCLUSION.......................................................................................... 22

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Benay v. Warner Bros.*
607 F.3d 620 (9th Cir. 2010) ............................................................................. 5, 6

*Benjamin v. Walt Disney*,
2007 WL 1655783 (C.D. Cal. 2007)..................................................................... 14

*Berkic v. Chrichton*,
761 F.2d 1289 (9th Cir. 1985) ................................................................... 7, 9, 19

*Bernal v. Paradigm Talent*,
788 F. Supp. 2d 1043 (C.D. Cal. 2010) ............................................................... 19

*Biani v. Showtime Networks*,
2025 WL 2586647 (9th Cir. Sept. 8, 2025) .......................................... 5, 6, 15, 16

*Campbell v. Walt Disney*,
718 F. Supp. 2d 1108 (N.D. Cal. 2010) ................................................................. 6

*Carlini v. Paramount*,
2021 WL 911684 (C.D. Cal. Feb. 2, 2021), *aff'd*, 2022 WL 614044 (9th
Cir. Mar 2, 2022)................................................................................................ 18

*Cavalier v. Random House*,
297 F.3d 815 (9th Cir. 2002) ................................................................................. 5

*Christianson v. West Publ'g*,
149 F.2d 202 (9th Cir. 1945) ................................................................................. 5

*Collier v. McKay*,
2025 WL 101646 (C.D. Cal. Jan. 7, 2025) ......................................................... 21

*Counts v. Meriwether*,
2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) .................................................... 20

*Douglas v. Osteen*,
560 F. Supp. 2d 362 (E.D. Pa. 2008) ..................................................................... 7

*DuckHole v. NBC*,
2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ........................................................ 6

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Eden Film Prod. v. Lockjaw*,
  2025 WL 1386018 (C.D. Cal. Apr. 25, 2025) ........................................................5

*Edwards v. Cinelou Films*,
  2016 WL 9686986 (C.D. Cal. June 22, 2016) ......................................................9

*Evans v. McCoy-Harris*,
  2019 WL 4284504 (C.D. Cal. May 9, 2019) ...................................................... 19

*Fillmore v. Blumhouse Prods.*,
  2017 WL 4708018 (C.D. Cal. July 7, 2017)..................................................... 5, 6

*Fox Broad. v. Dish Network*,
  747 F.3d 1060 (9th Cir. 2014) ........................................................................... 22

*Funky Films v. Time Warner Ent.*,
  462 F.3d 1072 (9th Cir. 2006) ......................................................................... 2, 7

*Gallagher v. Lions Gate Ent.*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ........................................... 12, 20

*Gold Glove Prods. v. Handfield*,
  648 F. App'x 679 (9th Cir. 2016) ...................................................................... 13

*Hudson v. Universal*,
  2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008)..................................................... 18

*Idema v. Dreamworks*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................................................6

*Kouf v. Walt Disney*,
  16 F.3d 1042 (9th Cir. 1994) ...............................................................................6

*Luvdarts v. AT&T Mobility*,
  710 F.3d 1068 (9th Cir. 2013) ........................................................................... 22

*Mattel v. MGA Entm't*,
  616 F.3d 904 (9th Cir. 2010) ............................................................................. 15

*Newt v. Twentieth Century Fox*,
  2016 WL 4059691 (C.D. Cal. July 27, 2016)..................................................... 17

*Olson v. Nat'l Broad*,
  855 F.2d 1446 (9th Cir. 1988) ........................................................................... 19

*Polychron v. Bezos*,
   2023 WL 6192743 (C.D. Cal. Aug. 14, 2023)......................................................6

*Purohit v. Legend Pics.*,
   448 F. Supp. 3d 382 (D. Del. 2020)......................................................................7

*Rice v. Fox Broad.*,
   330 F.3d 1170 (9th Cir. 2003) ............................................................................ 20

*Rickets v. CBS*,
   439 F. Supp. 3d 1199 (C.D. Cal. 2020) .............................................................. 19

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) .............................................................................. 21

*Schkeiban v. Cameron*,
   2012 WL 5636281 (C.D. Cal. Oct. 4, 2012)....................................................... 13

*Shame on You Prods. v. Banks*,
   120 F. Supp. 3d 1123,1164 (C.D. Cal. 2015) ............................................... 14, 20

*Sid & Marty Krofft Television v. McDonald's*,
   562 F.2d 1157 (9th Cir. 1977) ...............................................................................5

*Silas v. HBO*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016) .................................................... 13, 14, 20

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th. Cir. 2020) ........................................................................... 21

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) .................................................................................5

*Zella v. E.W. Scripps*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................................................ 5, 8

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its First Amended Complaint ("FAC"), Plaintiff finally admits that it did not previously "conduct a full and thorough review" of Defendants' film *Together*, and instead rushed to the courthouse to accuse reputable companies and individuals of copyright infringement based on inaccurate information about the film. Tellingly, Plaintiff has backed off its prior allegations that the works are "virtually identical," seemingly recognizing that the works at issue are quite different.  For example, the FAC wholly discards Plaintiff's original allegations about purported similarities between the main characters in the works and now *completely flips* which characters are allegedly substantially similar.  This alone reflects Plaintiff's willingness to invent similarities and pivot to inconsistent allegations, highlighting the weakness of its claims.

What has not changed from the initial complaint is Plaintiff's attempt to claim ownership over an unprotectable concept that Plaintiff admits was borrowed from Plato's *Symposium*, written more than two thousand years ago.  Instead of acknowledging that in the intervening centuries, numerous creators have explored the premise of two people physically conjoined in some manner, Plaintiff accuses Defendants of stealing this unprotectable concept from *Better Half*.  That is not how copyright law works.  Neither Plaintiff nor anyone else may monopolize the premise of two people being physically conjoined, especially when expressed so differently—indeed, *Better Half* is an "opposites attract" slapstick rom-com about two strangers who are *conjoined* for most of the work; *Together* is a body horror film about a long-term couple who are *detached* for most of the film.

District courts can assess works that are properly before the Court on a motion to dismiss, and they routinely dismiss copyright cases where the works are not substantially similar as a matter of law.  Such is the case here.  Defendants respectfully request that the Court dismiss Plaintiff's lawsuit with prejudice.

1

## II.   FACTUAL BACKGROUND

Because "[a] determination of substantial similarity requires a detailed examination of the works themselves," *Funky Films v. Time Warner Ent.*, 462 F.3d 1072, 1075 (9th Cir. 2006), summaries of *Better Half* and *Together* follow.[1]

### A.   *Better Half*

*Better Half* is an "opposites attract" romantic comedy set in Los Angeles. Ex. 1 (Dkt. 21-2).  The screenplay follows heartbroken professor Art and fiercely independent tattoo artist Daphne.  *Id.* at 2-5.  After Art prays to Zeus to find his true love, the pair has a chance encounter at a bar and then a one-night stand in Art's apartment.  *Id.* at 9-17.  The next morning, they discover they are physically connected from groin to navel.  *Id*.  The divergent duo—Art, a serial monogamist who loses himself in relationships, and Daphne, emotionally detached and immune to romantic feelings—are now inseparable.

Inescapably attached, they face a whirlwind of comedic antics.  For example, when Art's ex-girlfriend Katherine stops by, he forces Daphne to hide their situation by pretending to be showering.  *Id.* at 25-29.  Katherine yanks down the shower curtain and loses her mind when she (wrongly) believes they are having sex.  *Id*.  Art seeks help from his senile childhood pediatrician, Dr. Carpenter.  *Id.* at 33-36.  Totally unphased that the duo is attached, Carpenter tells them they are turning into an octopus.  *Id*.  Daphne tries to manage her ongoing work obligations; when she is unable to reschedule an interview, Art hides under the couch while Daphne answers the reporter's questions.  *Id.* at 41-47.  Art reveals himself during the interview, which leads to an unflattering profile.  *Id*.

---

[1] *Better Half* and *Together* form the basis of Plaintiff's FAC and are incorporated by reference.  Rather than resubmit the works, Defendants rely on the copies of the *Better Half* screenplay and film *Together* previously submitted to the Court.  Dkts. 21-2 (Freeman Ex. 1); 21-4 (Freeman Ex. 3).

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1       Despite the circumstances, Art and Daphne bond.  In a scene of slapstick
2 humor, Art and Daphne discover they can control the other's limbs, and begin
3 hitting each other.  *Id.* at 58-60.  As Art and Daphne acclimate to everyday life, they
4 accept being conjoined.  *Id.* at 86-89.  Daphne discovers how to connect with others
5 while Art ironically develops his independence.  *Id*.  Lessons learned, Art and
6 Daphne wake one morning to find they are no longer attached—the work of Zeus.
7 *Id.* at 89.  In the end, they meet at a bar, now dating.  *Id.* at 93-94.

8       Plaintiff asserts that Defendants copied *Better Half* after it was sent to
9 defendant WME in August 2020.  FAC ¶¶ 26-28.

10 **B.**     ***Together***

11       *Together* is a supernatural "body horror" thriller that Michael Shanks wrote
12 in 2019.  Shanks also directed the film, which was produced in 2024 and stars
13 defendants Dave Franco and Alison Brie, who are married in real life.  *Together*
14 explores a long-time couple's relationship following an unknowing encounter with
15 a supernatural substance that progressively attracts their bodies to one another.

16       *Together* opens in a forest where two dogs drink from an ominous hole in a
17 cave. Ex. 3 at 0:52.  The dogs begin behaving erratically, and morph into a single
18 deformed creature.  *Id.* at 4:55.  The movie cuts to long-term couple Tim and Millie
19 in their city apartment, preparing to move to the countryside for Millie's new job.
20 *Id.* at 5:03.  Millie proposes to Tim, who reluctantly accepts.  *Id.* at 8:38.

21       The film flashes forward as the couple moves into their cabin in the woods.
22 *Id.* at 12:02.  They fall into the same cave from the opening scene.  *Id.* at 20:33.
23 Tim tells Millie that when his father died, his mother continued living with his
24 rotting corpse.  *Id.* at 26:20.  Out of water, he drinks from a pool.  *Id.* at 23:42.  The
25 next morning, the couple wakes to discover the skin on their legs is stuck together.
26 *Id.* at 30:05.  Chalking it up to mildew, they painfully peel their legs apart, and
27 return home.  *Id*.

28

3

What follows is a series of increasingly gruesome incidents as Tim and Millie's bodies try to unite as a result of some mysterious force. For example, when Millie drives into town, Tim collapses in the shower. *Id.* at 33:25. At every turn she makes in her car, Tim's body violently mirrors the vehicle's movements, whipping him from wall to wall. *Id*. Later, Millie awakens to find her hair coiled in Tim's throat. *Id.* at 43:46. The next morning, Millie drops Tim at the train station. *Id.* at 45:50. Separated for too long, Tim enters a trance and stumbles back to Millie, where they have sex in a bathroom stall. *Id.* at 50:33. After realizing they are stuck together, Millie brutally pulls Tim out of her to avoid getting caught by fellow teacher Jamie. *Id.* at 53:03.

The force attracting the couple's bodies worsens at night. *Id.* at 1:04:34. Though they try to sleep apart, their bodies drag toward one another against their will and their arms begin to fuse. *Id.* at 1:09:42. The next morning, Tim finds Millie has tied him to a chair. *Id.* at 1:14:25. And true to the body horror genre, Millie uses an electric saw to cut through the skin connecting them. *Id*.

Needing medical attention, Millie runs to Jamie's house for help. *Id.* at 1:17:40. There, she sees a wedding video of two men each vaguely resembling Jamie. *Id.* at 1:19:35. The men marry at the cave site, then morph together into one being: Jamie. *Id.* at 1:20:43. Jamie reveals himself to be the leader of a cult that worships the supernatural process through which couples become one body. *Id.* at 1:22:04. He then attacks Millie, who escapes. *Id.* at 1:24:15.

After fighting the force throughout the film, Millie and Tim succumb, allowing their bodies to merge. *Id.* at 1:31:20. The Spice Girls song "2 Become 1" fittingly plays as the two literally become one person. *Id.* At the end, the audience sees someone answer Tim and Millie's front door: a single androgynous person— Tim and Millie merged. *Id.* at 1:36:01.

## III.    PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS

To avoid dismissal of its copyright infringement claim, Plaintiff must demonstrate that the works' protected expression is substantially similar. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). It cannot.

### A.    Substantial Similarity May Be Decided on a Motion to Dismiss

It is well established that when the works at issue in a copyright case "are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Publ'g*, 149 F.2d 202, 203 (9th Cir. 1945); *Biani v. Showtime Networks*, 2025 WL 2586647, at *3 (9th Cir. Sept. 8, 2025) (affirming dismissal for lack of substantial similarity as a matter of law). Courts routinely grant motions to dismiss where the works at issue are not substantially similar as a matter of law. *See Eden Film Prod. v. Lockjaw*, 2025 WL 1386018, at *4-7 (C.D. Cal. Apr. 25, 2025); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *5-10 (C.D. Cal. July 7, 2017).

### B.    The Court Must Disregard Unprotectable Elements

"It is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." *Sid & Marty Krofft Television v. McDonald's*, 562 F.2d 1157, 1163 (9th Cir. 1977). Accordingly, to assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which "focuses on 'articulable similarities'" between the works. *Zella v. E.W. Scripps*, 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007). "[A] court must filter out and disregard the non-protectable elements[.]" *Cavalier v. Random House*, 297 F.3d 815, 822-23 (9th Cir. 2002).

Non-protectable elements that courts must filter out include ideas and *scenes a faire*, or elements that flow naturally from a basic premise. *Id*. For example, in *Benay v. Warner Bros.*, the Ninth Circuit filtered alleged similarities that flowed from the unprotectable "plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" as

*scenes a faire*.  607 F.3d 620, 625 (9th Cir. 2010).  Such filtered elements included "meetings with the Emperor and numerous battle scenes," and the fact "in both works the American protagonist is spiritually transformed by his experiences in Japan." *Id.*

Courts also filter out generic or common elements to films, television series, and specific genres before analyzing substantial similarity.  *See Biani*, 2025 WL 2586647, at *5 (abstract similarities like "strong" female characters engaged in "deviant behavior" are unprotectable); *Fillmore*, 2017 WL 4708018, at *3 (generic literary elements like "[d]ream sequences" and "[b]ringing the dead back to life" were unprotectable "common elements"); *DuckHole v. NBC*, 2013 WL 5797279, at *4, *8-9 (C.D. Cal. Sept. 6, 2013) ("sexual tension" and "constant insults" were "common to comedic shows").

Courts must also filter out preexisting elements that are in the public domain or not original to the plaintiff's work.  *See Idema v. Dreamworks*, 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001) (court must filter out "elements borrowed from another author" or from the "public domain"); *Polychron v. Bezos*, 2023 WL 6192743, at *8 (C.D. Cal. Aug. 14, 2023) (filtering out characters and plot points attributable to preexisting work from another author).

## C.    The Works' Protected Expression Is Not Substantially Similar

After unprotectable elements are filtered out, courts compare the objective "expressive elements" in the works' plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.  *Kouf v. Walt Disney*, 16 F.3d 1042, 1045 (9th Cir. 1994).  To assess similarity, the law requires a review of the actual works rather than crediting a plaintiff's characterizations.  *See Campbell v. Walt Disney*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal. 2010) (rejecting allegations "contradicted by the two stories themselves").  Moreover, courts afford little weight to lists of "random similarities."  *Idema*, 162 F. Supp. 2d at 1180.  After filtering out the unprotectable

elements and reviewing the works, *Better Half* and *Together* are not close to substantially similar in protected elements.

### 1.   The Plots and Sequences of Events Are Not Similar

As "general plot ideas are not protected by copyright law," the extrinsic test compares "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Chrichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (no protection where idea of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people" and a "young professional" who exposes them was expressed differently). The Ninth Circuit frequently rejects substantial similarity claims where the works' similarities are "develop[ed] quite differently." *Funky Films*, 462 F.3d at 1077-1078.  That is the case here.

### a.   The Alleged Similarities are Unprotectable

Most of the purported similarities between the works' plots are either unprotectable concepts or *scenes a faire*.

For example, the idea of portraying two people whose bodies are fused is an unprotectable premise that has appeared in many works.  Plaintiff concedes this premise was borrowed from Plato's *Symposium*.  FAC ¶¶ 21, 41, 47, 75, 85.  *Better Half's* screenplay describes a famous speech by Aristophanes about an ancient myth: that in primal times, people had doubled bodies, and that Zeus separated them with lightning so each half would need to seek out the other.[2]  No one owns this centuries-old concept.  *Purohit v. Legend Pics.*, 448 F. Supp. 3d 382, 388 (D. Del. 2020) (no substantial similarity of works premised on centuries-old public domain "folklore" character); *Douglas v. Osteen*, 560 F. Supp. 2d 362, 367 (E.D. Pa. 2008) (no copyright in "biblical stories").

---

[2] *See Symposium*, WIKIPEDIA, https://en.wikipedia.org/wiki/Symposium_(Plato); https://archive.org/details/banquetofplato00platrich/page/n6/mode/1up.

Indeed, variations of this generic premise are common to numerous creative works.[3]  For example, the short film *A Folded Ocean* (2023) features a couple whose bodies become conjoined.[4]  That film is about a couple who awake one morning to find themselves connected.  They unsuccessfully seek medical attention, and struggle to navigate everyday life.  They ultimately are able to disconnect, ending with the couple separated but having emotionally evolved, just like in *Better Half*.  Similarly, the 2021 horror film *Two*[5] involves a couple who wakes up and discovers their abdomens are stitched together against their will.

Plaintiff argues *Better Half* and *Together* "invert" the premise of Plato's *Symposium* by depicting individuals seeking separation (FAC ¶¶ 41, 47), but that premise is only true as to *Better Half*.  *Together* follows a physically detached couple attempting to *stop* a force from merging them into one person, and for the vast majority of the film they are *not* connected.

In addition, many supposed similarities naturally flow from the unprotectable premise of two people stuck together in some manner.  For example, Plaintiff alleges the works are similar because "main characters struggle to navigate daily life as their physical attachment progresses" and "desperately search for ways to detach" including "medical intervention."  FAC ¶ 42.  But those are concepts that naturally flow from a story about two people conjoined against their will.  Similarly, Plaintiff contends both works involve characters ultimately having "unexpected and deeper connection" and "attempt to conceal their physical attachment from others."  *Id.* ¶¶ 43-44.  But alleged similarities flowing from the unprotectable concept of two people who become attached must be disregarded.

---

[3] The Court may judicially notice generic elements common to creative works like these.  *See Zella*, 529 F. Supp. 2d at 1129 (collecting cases).

[4] *See A Folded Ocean*, https://vimeo.com/889109905.

[5] *See Two*, https://www.imdb.com/title/tt12358104/.

**b.     The Plots and Sequences of Events Are Not Alike**

After filtering out the unprotectable elements, *Better Half* and *Together* lack similarity in their "actual concrete" plot elements. *Berkic*, 761 F.2d at 1293. *Better Half* is a whimsical rom-com in which two people awake from a one-night stand *conjoined*, and humorously try to detach but fall in love; *Together* is a horror movie about a *detached* long-term couple battling a supernatural force trying to fuse them together.  Beyond the concepts and *scenes a faire* described above, the remaining alleged similarities are mischaracterizations or overgeneralizations designed to make the works appear similar when they are not.

Addressing the works' supposedly similar premise, Plaintiff contends both works are spawned by a "supernatural merging" incited by the male protagonist. FAC ¶¶ 67-68.  But this is a gross overgeneralization that could describe countless works of fiction.  Indeed, *all* stories with other-worldly elements necessarily feature some sort of supernatural force.  Regardless, the FAC admits the ways the works' protagonists encounter supernatural elements could not be further apart.  The duo in *Better Half* becomes conjoined following a one-night stand—after Zeus answers Art's prayer for love. Ex. 1 at 17-21.  Meanwhile in *Together*, Tim drinks an unknown liquid from a mysterious hole, causing his and Millie's bodies to attract. Ex. 3 at 23:42.

Similarly, Plaintiff alleges that both works feature a "torrential downpour" that "forces the couple to spend the night together" (FAC ¶ 68), but those scenes are nothing alike.  In *Better Half*, the duo discovers they are conjoined at the torso after having sex in Art's apartment—and remain connected until the end. Ex. 1 at 17-89.  Meanwhile, in *Together*, Tim and Millie wake after falling in a cave, painfully peel their legs apart, and leave detached. Ex. 3 at 30:05.  That both works include "rain" also is an unprotectable element taken out of context that, as the FAC admits, is expressed very differently. *Edwards v. Cinelou Films*, 2016 WL 9686986, at *4

(C.D. Cal. June 22, 2016) ("commonly-used artistic devices" include scenes shot "in the rain for dramatic effect").

As another example, Plaintiff alleges the protagonists in both works "start to control each other's body parts" and "experience seizure-like movements."  FAC ¶¶ 42, 70, 74.  Again, a mischaracterization.  The characters in *Better Half* begin twitching, and in a slapstick scene, realize they can control the other's limbs while *attached*.  Ex. 1 at 58-65.  This is quite different from *Together*, where Tim's body thrashes across the shower mirroring Millie's movements while driving, or the catatonia he experiences when the two are *separated*.  Ex. 3 at 33:45; 48:06.

The bathroom scenes Plaintiff alleges are "similar" likewise have virtually nothing in common.  FAC ¶ 71.[6]  *Better Half*'s lighthearted bathroom scene is set in Art's apartment, with Art and Daphne hiding under a shower curtain to avoid being seen by Art's ex.  Ex. 1 at 26-30.  Far from a sex scene, it fits squarely within the work's slapstick subgenre.  By contrast, the nail-biting bathroom scene in *Together* is not comedic at all.  It features Tim showing up at Millie's school in a trance.  They have sex in a stall.  After becoming stuck, Millie forcefully tears Tim out of her to avoid getting caught.  Ex. 3 at 53:03.

As to the works' endings, Plaintiff erroneously claims both works see the characters "accept their conjoined existence."  FAC ¶¶ 42, 45 77, 84.  In reality, *Better Half* sees Art and Daphne wake to discover they are no longer conjoined.  Ex. 1 at 86-90.  In *Together*, Tim and Millie surrender themselves and graphically merge into one androgynous human.  Ex. 3 at 1:31:20.

Having previously—and inaccurately—alleged that the works end with both couples pulling "the same exact Spice Girls record, *Spiceworld*" (Compl. ¶¶ 42, 62), Plaintiff downgrades its allegation to state that both works feature protagonists who

---

[6] Plaintiff's FAC downgrades this allegation from "nearly identical" and "strikingly similar" in its initial complaint to merely "similar" in the FAC.  Compl. ¶ 57; FAC ¶ 71.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

"play a vinyl record" and "dance" as they "embrace their conjoined existence." FAC ¶¶ 45, 77.  In reality, the "dancing" scenes are nothing alike.  *Better Half* features a comical montage of the duo adapting to everyday life culminating in them dancing, while *Together* features an emotional scene where the couple merges.

Plaintiff still claims that both works "reference" the Spice Girls, although it again ignores that the group is referenced in totally different ways.  FAC ¶¶ 56, 69, 88.  *Better Half*'s Art and Daphne are both pop-culture buffs who repeatedly reference various celebrities and artistic works relevant to their condition— including the Spice Girls' song "2 Become 1," a fitting reference for a work about two people joined as one.  Ex. 1 at 25.  Towards the end of the screenplay, Daphne sees a copy of *Spiceworld* while searching through storage.  *Id.* at 83.  This is nothing like *Together*, where Millie tells a friend a story about when Tim gifted her the *Spice* album (not *Spiceworld*) on their second date, a romantic gesture that Millie laments occurred more than ten years earlier.  In a bookend to Millie's earlier story, the song "2 Become 1"—from *Spice*, not *Spiceworld*—plays as the couple literally becomes one body at the end of the film.  Ex. 3 at 1:31:30.  No one may monopolize references to the Spice Girls or "2 Become 1" in a work, especially in a work that is literally about that topic.

Plaintiff's FAC otherwise offers a series of cherry-picked similarities that are immaterial to the plot, overgeneralized, or taken completely out of context:

- The FAC asserts both works feature characters who try to detach "using a chainsaw … and have a similar fight about going to the hospital."  FAC ¶¶ 42, 76.  These elements naturally flow from works about two people connected against their will.  More than that, the scenes are not similar.  At the end of *Better Half*, Art's senile pediatrician comically appears with a chainsaw after the duo is separated.  No saw is used.  Ex. 1 at 90.  Meanwhile, in one of *Together*'s more

gruesome scenes before the climax, Millie uses an electric saw to slice through her and Tim's arms.  Ex. 3 at 1:15:45.

- Plaintiff's generic reference to the works referencing hospitals is just as groundless.  FAC ¶ 76.  *Better Half* sees the duo go to the hospital where their doctor cannot treat them due to "bad insurance," while the couple in *Together* never makes it to a hospital.  Ex. 1 at 75-77; Ex. 3 at 1:17:00.

- According to Plaintiff, both works include "awkward marriage proposals" that "emasculate[] the male," but then describes how the proposals are nothing alike.  FAC ¶ 65.  *Better Half* references Art's many *offscreen* failed proposals.  Ex. 1 at 6, 53-54.  *Together* features Millie's on-screen proposal, which Tim begrudgingly accepts to avoid public embarrassment.  Ex. 3 at 8:38.

- The FAC also alleges that characters try "to make it in time for their pivotal career opportunity but [are] unable … due to their physical merging."  FAC ¶ 73.  Again, this is misleading.  In *Better Half*, Daphne cannot meet with a reporter at work while attached to Art, so she conducts the interview in Art's apartment while he hides in the couch.  Ex. 1 at 41-48.  By contrast, Tim intends to go to the city for a gig, but never makes it past the train station because he enters a trance leading him back to Millie.  Ex. 3 at 47:10.

- Plaintiff contends both works use similar "visual motifs" to foreshadow later events.  FAC ¶¶ 64, 66, 72.  But foreshadowing is a common literary technique.  *See Gallagher v. Lions Gate Ent.*, 2015 WL 12481504, at *4 (C.D. Cal. Sept. 11, 2015) ("foreshadowing" danger is "commonplace" and must be filtered out).  Regardless, the ways each work uses foreshadowing are distinct. *Better Half* opens with a comedic scene where Art lectures on Plato's *Symposium*, while *Together* ominously depicts two dogs consuming a strange fluid and gruesomely becoming conjoined.  Finally, Plaintiff contends both works use "strikingly similar visual motif[s] of rodents" to hint at character fates.  *Id.* ¶ 66. But *Better Half* features a still-alive mouse caught in a trap in Art's apartment after

Zeus connects them; *Together* features a rotting rat king in a light fixture.  That different rodents are found in different scenes in different characters' homes is not protectable nor similar.

After filtering out the unprotectable premise and examining the works themselves rather than relying on Plaintiff's mischaracterizations, the plots are not remotely close to being substantially similar.

### 2. The Themes Are Not Similar

The themes of *Better Half* and *Together* are likewise different.  "A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise."  *Silas v. HBO*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016); *Gold Glove Prods. v. Handfield*, 648 F. App'x 679, 680-681 (9th Cir. 2016) ("shared themes" of father-daughter reconciliation and the importance of family are "commonplace").

Plaintiff alleges that both works share themes of "codependency, isolation, autonomy, fear of becoming one's parents, lack of accomplishment in career, and fear of commitment," FAC ¶ 46, but these are all incredibly abstract concepts that appear in numerous works. *See Schkeiban v. Cameron*, 2012 WL 5636281, at *2 (C.D. Cal. Oct. 4, 2012) ("general similarities between themes, such as saving the world … not subject to copyright").  Further, themes like codependency, isolation, and autonomy naturally flow from the basic premise of two people who find themselves attached, and the others are generic to stories exploring relationships (especially rom-coms like *Better Half*).  Even if these themes were somehow protectable, Plaintiff ignores how differently they are expressed.  *Better Half* is a standard rom-com with farcical elements, and *Together* is a dark, suspenseful blend of horror and mystery.

The remaining themes Plaintiff offers fare no better.  First, while Plaintiff asserts both works "focus on the perils of enmeshment," that too is *scenes a faire* to the concept of two people stuck together.  FAC ¶ 47. Nor is it accurate to claim that

13

the characters' "enmeshment… lead to a loss of personal identity." *Id.* In *Better Half*, the couple *discovers* their true identities while connected to one another. And in *Together*, the couple spends most of the film disconnected, not enmeshed, and ultimately morphs into one person.

While Plaintiff next claims both works involve how romantic relationships are impacted by "the unresolved imprint of parental relationships," that theme is generic and also is rooted in very different facts. FAC ¶ 48. In *Better Half*, Daphne does not develop intimate relationships because her domineering father forced her mother to give up her artistic dreams. Ex. 1 at 63, 78-82. By contrast, in *Together*, Tim is afraid to fully commit to Millie because as a boy he witnessed his mother go crazy when she lost his father, living alongside his corpse. Ex. 3 at 26:20.

Finally, while Plaintiff asserts that both works address "how suppressing aspects of oneself—including one's past—can keep a relationship in stasis," FAC ¶ 49, this too is a generic concept expressed differently in the works. Plaintiff also fails to identify any examples in the works.

### 3. The Characters Are Not Similar

Plaintiff's FAC abandons its initial allegations claiming substantial similarity between Art and Millie, and Daphne and Tim. Now Plaintiff asserts *the opposite pairings*—alleging that (1) Art and Tim, and (2) Daphne and Millie are actually substantially similar. *Compare* Compl. ¶¶ 45-49 *with* FAC ¶¶ 50-59. But Plaintiff's second try is as flawed as its first.

"In determining whether characters are similar, a court looks at the totality of the characters' attributes and traits [and] the extent to which the defendants' characters capture the total concept and feel of the figures in the plaintiff's work." *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123,1164 (C.D. Cal. 2015). Courts also analyze characters' "noticeable" (*Silas*, 201 F. Supp. 3d at 1177) or "material" (*Benjamin v. Walt Disney*, 2007 WL 1655783, at *6 (C.D. Cal. 2007)) differences, and "alleged similar characteristics [pled] at a level of generality" are

"unprotectable" and therefore disregarded. *Biani*, 2025 WL 2586647, at \*5. Plaintiff's alleged similarities between the couples all are generic elements (like gender) that ignore almost everything about them, or are gross mischaracterizations that try to make two very different sets of characters seem alike when they are not. FAC ¶¶ 50-59.

### a.   Art (*Better Half*) and Tim (*Together*)

Plaintiff's comparison of Art and Tim is rife with misstatements and overgeneralizations. FAC ¶¶ 51-56. In truth, Art and Tim have little in common.

*Better Half's* Art is a nerdy male professor with dreams of being an archaeologist. Having experienced a series of failed relationships, he subjugates his interests to those of his girlfriends—but being attached to Daphne helps him regain his sense of self. In contrast, *Together*'s Tim is an aspiring musician in an unhappy long-term relationship. After he consumes an unknown substance, he experiences a series of injuries including being violently hurled around the shower and choking as his body slowly succumbs to the mysterious force. Art, on the other hand, becomes more independent and ultimately realizes he does not need a romantic relationship to be happy. Tim, meanwhile, goes from resentful and detached to accepting complete codependency by merging with Millie into one being.

Plaintiff offers a series of claims that are too generic to merit protection. For example, Plaintiff alleges the characters are substantially similar because they are "heterosexual men in their 30s," FAC ¶ 51, but basic characteristics like age, gender, and sexual orientation are not protectable. *See Mattel v. MGA Entm't*, 616 F.3d 904, 916 (9th Cir. 2010) (characteristics like "age, race [and] ethnicity" are "unprotectable"). Plaintiff also claims that in both works, the male protagonist "seeks to understand how the fusion occurred" (FAC ¶ 54), but that concept flows naturally from any work about people mysteriously connected. Nor are they expressed the same way. Both Art and Daphne scour Plato's writings hoping to reverse Zeus's spell, while Tim returns to the mysterious cave he fell in, where he

encounters ritualistic drawings and two missing humanoid hikers whose grotesque fusion went awry.

The few remaining similarities are vague or misleading. For example, Plaintiff contends both "male protagonists nearly destroy[] the female protagonist's career" (FAC ¶ 55), but the scenes referenced have nothing in common. Art hides in the couch while Daphne gives her interview before revealing himself, while a catatonic Tim stumbles into Millie's school where the couple has sex in a bathroom stall. While Plaintiff contends that both Art and Tim are "serious collectors of vinyl[s]," FAC ¶ 56, Art is a pop-culture buff whose records Daphne finds in storage, while Tim is a failed musician. Other so-called similarities are inaccurate to one or both characters. For instance, Plaintiff contends that both works feature the male protagonist's dependence on women "framed through maternal imagery" (a generic trope), but then fails to list what "imagery" it refers to. FAC ¶ 53. Nor is the one-off joke in *Better Half* about Art having been coddled by his mother similar to Tim's relationships with his mother (who had a mental breakdown) or Millie (who dominates Tim).

These characters' vast differences preclude a finding of substantial similarity. *Biani*, 2025 WL 2586647, at *5 (characters with "more significant differences" and "few real similarities" not substantially similar).

### b. Daphne (*Better Half*) and Millie (*Together*)

Plaintiff's allegations regarding similarities between Daphne and Millie fare even worse. FAC ¶¶ 57-59. Daphne in *Better Half* is a tattoo artist who treats sexual partners as expendable. Prioritizing her career, she is emotionally detached, sarcastic, and structured (assigning lovers to days of the week). Daphne is nothing like *Together*'s Millie, an elementary teacher who has been with her fiancé for more than a decade, and who is ultimately injured by a cult leader before merging with Tim into one person.

Plaintiff offers a series of generic descriptions—like both being "heterosexual women in their 30s" and "career-driven"—none of which are protectable. FAC ¶ 57; *Newt v. Twentieth Century Fox*, 2016 WL 4059691 at \*13 n.17 (C.D. Cal. July 27, 2016) (substantial similarity demands more than "characters of similar age, race, gender, appearance").

Plaintiff also asserts both characters' "arcs follow parallel trajectories," even though their stories are not remotely similar. FAC ¶ 58. While attached to Art, Daphne transforms from fiercely independent and emotionally detached to someone who values connection and emotional intimacy. Millie, by contrast, proposes to Tim, moves the couple to the countryside, and disbelieves him when he says something is wrong. In the end, a remorseful Millie comes to more fully respect her partner, as they relent to the substance and become a single, androgynous being.

Plaintiff's remaining claims are inaccurate to one or both women. For example, Plaintiff pleads that both "control the direction of their romantic relationships," but *Better Half*'s Daphne admits that she has never had an actual romantic relationship before Art. Ex. 1 at 31. Plaintiff also claims that both female characters are "pragmatic" and "solution-oriented, caring less about how the fusion occurred and more about [how] to end it." FAC ¶ 59. But Plaintiff provides no examples in support of this contention, and characters who try to disconnect naturally flow from the premise of someone stuck to another person against their will. Plaintiff conveniently ignores that Daphne fervently works to determine how the connection occurred and how to reverse it, while Millie spends much of the film trying to *prevent* the disjointed couple from merging.

Other than generic similarities, Daphne and Millie are not alike, and certainly are not substantially similar.

### c. Paul (*Better Half*) and *Jamie* (*Together*)

Grasping for any other characters that have something in common, Plaintiff asserts that Paul and Jamie have "one of the most surprising parallels" because they

serve as the "gay confidant" (FAC ¶¶ 60-62), even though this is a common trope in numerous works. *See Carlini v. Paramount*, 2021 WL 911684, at *11 (C.D. Cal. Feb. 2, 2021) ("gay best friend" common in comedies), *aff'd*, 2022 WL 614044 (9th Cir. Mar 2, 2022); *Hudson v. Universal*, 2008 WL 4701488, at *6 (S.D.N.Y. Oct. 23, 2008) (plaintiff "cannot claim creative ownership of … over-the-top, gay character"). Besides being gay men, the characters have little in common. Paul—a minor character—is Art's best friend whom Art comically attacks after mistakenly believing Paul slept with his ex-girlfriend. Meanwhile, Jamie is Millie's colleague and neighbor who turns out to be a ritualistic cult leader who attempts to kill Millie. *Together*'s climax reveals that Jamie is actually a combination of two men fused into one.

### d.   Daphne's Parents (*Better Half*) and Tim's Parents (*Together*)

Plaintiff next contends that Daphne and Tim's parents are substantially similar because both sets of parents "inhabit an outsized role" within the story and cast "long shadows" over the main characters' relationships. FAC ¶ 63. But like those before it, this allegation is superficial to the point of failing to identify any meaningful similarities. The fact that both stories—like countless others—include "parental" characters is far too generic to merit protection, and even a cursory review of the works show the parents are nothing alike. In *Better Half*, Daphne and Art go to Daphne's home for dinner, where they encounter Daphne's controlling and judgmental father, and her doting and unfulfilled mother. By contrast, Tim's unnamed parents are only briefly seen in flashback. His father is deceased, having died in bed next to Tim's mother who then had a breakdown while living next to her husband's rotting corpse.

### 4.   The Settings Are Not Similar

The settings of *Better Half* and *Together* are almost entirely different. The former takes place in Los Angeles, and is largely set in Art's apartment. Other locations include the local bar where Art and Daphne meet, a tattoo parlor, a

hospital, and Daphne's parents' house.  In *Together*, the main characters move into a cabin in the woods and get stuck in an underground cave.  Other locations include the elementary school where Millie works, the train station, and a neighbor's house.

Plaintiff claims both are "set in the contemporary United States" and "take place inside the home."  FAC ¶ 78.  These are not protectable similarities; countless works take place in modern times and are set inside a "home."  *Evans v. McCoy-Harris*, 2019 WL 4284504, at *5 (C.D. Cal. May 9, 2019) (no similar setting despite both works set in "present day" D.C.-area); *Bernal v. Paradigm Talent*, 788 F. Supp. 2d 1043, 1071 (C.D. Cal. 2010) ("commonplace settings such as houses" not protectable).  Regardless, the characters' homes are nothing alike.

Plaintiff also alleges that both works "include scenes at the school where one of the protagonists works."  FAC ¶ 79.  Again, a scene taking place at a school where a character works is commonplace.  *See Rickets v. CBS*, 439 F. Supp. 3d 1199, 1212 (C.D. Cal. 2020) ("[S]cenes taking place at school … naturally flow from [the] plot").  Regardless, these scenes are drastically different.  Art lectures his college-age students where he gets electrocuted by his projector.  Millie has sex with Tim after he shows up at her school in a trance.  Finally, Plaintiff contends both works feature a scene "set in a medical setting involving a doctor."  FAC ¶ 80.  But medical settings are *scenes a faire* to works about people with mysterious ailments.  Nor are these scenes similar.  Towards the end of *Better Half*, connected Art and Daphne go to a hospital, where a sarcastic doctor does not cure them.  Meanwhile, the beginning of *Together* has Tim going to a rural doctor's office alone, where he is diagnosed with anxiety and prescribed muscle relaxants.  *See Berkic*, 761 F.2d at 1293 (dissimilar settings despite both featuring "hospitals").  The works do not share a similar setting.

### 5.    The Dialogue Is Not Similar

For a plaintiff to demonstrate substantial similarity of dialogue, it must show "extended similarity of dialogue."  *Olson v. Nat'l Broad*, 855 F.2d 1446, 1450 (9th

Cir. 1988); *Gallagher v. Lions Gate*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue not "extended similarity").

The FAC identifies two supposedly similar references.  FAC ¶¶ 85-88. Plaintiff first claims both works discuss Plato's *Symposium* in a "pedagogical tone." *Id.* ¶ 85.  But this is a public domain work.  Moreover, the actual dialogue is not the same.  FAC ¶¶ 86-87; Ex. 1 at 2-3, 84-85; Ex. 3 at 59:20.  Nor does "overall tone … rise to the level of substantial similarity" where "actual dialogue in these segments is quite different."  *Rice v. Fox Broad.*, 330 F.3d 1170, 1176 (9th Cir. 2003)

Second, Plaintiff claims that both works reference the Spice Girls throughout, including the song "2 Become 1."  FAC ¶ 88.  But no one owns generic references to celebrities or songs when the dialogue differs.  *See Shame on You Prods.*, 120 F. Supp. 3d at 1151 n.142 ("common pop culture reference … unprotectable").  As described above, *Better Half* references the Spice Girls and "2 Become 1" in Art's passing pop culture references about conjoined bodies, while in *Together*, "2 Become 1" predictably plays as the couple literally becomes one.  The actual dialogue is not alike at all.

### 6.    The Moods and Paces Are Not Similar

The works' moods and paces are also different.  As to mood, while Plaintiff asserts both works are "character-driven works that combine different genres" including body horror and rom-com (FAC ¶ 81), it provides no support for this. Moreover, a "general mood that flows naturally from unprotectable basic plot premises is not entitled to protection."  *Silas*, 201 F. Supp. 3d at 1180.  Nor are the moods the same.  *Better Half* is lighthearted, humorous, and incorporates elements from romantic and screwball comedies.  *Together*, by contrast, is a sinister horror film.  That both works may feature comedic moments—expressed very differently—does not establish substantial similarity.  *See Counts v. Meriwether*, 2015 WL 9594469, at *13 (C.D. Cal. Dec. 30, 2015) (no substantially similar moods where both works had "comedic elements").

As to pace, Plaintiff all but concedes the works do not share a similar pace, having removed all allegations relating to pace from the FAC. This is because the works' paces are not alike. *Better Half* proceeds in a linear fashion, has montages, and is told over the course of a few days without flashbacks. *Together*, meanwhile, takes place over a few weeks as the main characters move to their new home, and features a suspenseful prelude, flashbacks, fast-moving action sequences, and nightmares that seem real until the sleeping character wakes.

## IV. **PLAINTIFF'S SELECTION-AND-ARRANGEMENT THEORY FAILS**

Plaintiff's FAC makes three passing references to the works having similar "selection and arrangement" of unprotectable elements. FAC ¶¶ 5, 39, 92. But the selection-and-arrangement standard is demanding. In the Ninth Circuit, "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). It requires more than "random similarities scattered throughout;" Plaintiff must show "the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074-75 (9th. Cir. 2020) ("substantial amounts" of shared elements combined in same "*novel* arrangement") (emphasis in original).

Here, Plaintiff does not offer any of the unprotectable elements it believes are selected and arranged in the same manner. Regardless, of the few unprotectable similarities between the works, almost all appear in a different order and at different plot points, with no particular similarity or shared pattern in how they are arranged. This does not meet the high bar for showing a plausible selection-and-arrangement claim. *See Collier v. McKay*, 2025 WL 101646 (C.D. Cal. Jan. 7, 2025) (conducting "holistic analysis" and rejecting selection-and-arrangement theory where plaintiff failed to identify "concrete similarities").

## V.    PLAINTIFF'S SECONDARY LIABILITY ALLEGATIONS FAIL

Plaintiff once again alleges in a single conclusory sentence that "Defendants have directly, contributorily, and/or vicariously infringed StudioFest's copyrighted work." FAC ¶ 97.  Because Plaintiff's claim for direct infringement fails, its claims for contributory and vicarious infringement also fail.  *See Fox Broad. v. Dish Network*, 747 F.3d 1060, 1068 (9th Cir. 2014) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").  Even if not, a threadbare allegation of secondary infringement is insufficient to state a valid claim.  *Luvdarts v. AT&T Mobility*, 710 F.3d 1068, 1072 (9th Cir. 2013).

## VI.    CONCLUSION

Plaintiff has the full works and has had two attempts to plead its case.  But Plaintiff cannot escape the fact that *Better Half* and *Together* are not substantially similar as a matter of law.  Defendants respectfully request the Court dismiss the First Amended Complaint with prejudice.

DATED: September 17, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
ADRIAN F. VALLENS

By: /s/     Nicolas A. Jampol
         Nicolas A. Jampol

Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants certifies that this Memorandum contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

By: /s/    Nicolas A. Jampol
              Nicolas A. Jampol

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT