1  DANIEL S. MILLER (State Bar No. 218214)
   dmiller@millerbarondess.com
2  SAMANTHA RIFKIN (State Bar No. 349277)
   srifkin@millerbarondess.com
3  MILLER BARONDESS, LLP
   2121 Avenue of the Stars, Suite 2600
4  Los Angeles, California 90067
   Telephone: (310) 552-4400
5  Facsimile:  (310) 552-8400

6  Attorneys for Plaintiff
   StudioFest LLC
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 STUDIOFEST LLC, a New York            CASE NO. 2:25-cv-04294-JLS-SK
   limited liability company,
12                                        **PLAINTIFF'S OPPOSITION TO**
              Plaintiff,                  **DEFENDANTS' MOTION TO**
13                                        **DISMISS PLAINTIFF'S FIRST**
        v.                                **AMENDED COMPLAINT**
14
   WILLIAM MORRIS ENDEAVOR               *[Filed Concurrently with Declaration of*
15 ENTERTAINMENT, LLC, a California      *Daniel S. Miller and (Proposed) Order]*
   limited liability company;
16 DAVE FRANCO, an individual;           Date:      December 12, 2025
   ALISON BRIE, an individual;           Time:      10:30 a.m.
17 MICHAEL SHANKS, an individual;        Crtrm.:    8A
   NEON RATED, LLC, a Delaware
18 limited liability company; and DOES 1 Assigned to Hon. Josephine L. Staton
   through 10, inclusive,
19                                        Trial Date:      None Set
              Defendants.
20

21

22

23

24

25

26

27

28

755620.8

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................... 2

III.    LEGAL STANDARD .............................................................................. 2

IV.     PLAINTIFF HAS PLED A VALID COPYRIGHT INFRINGEMENT CLAIM ...................................................................... 3

        A.      Defendants' Motion Is Premature ............................................... 3

                1.      Dismissal Is Disfavored .................................................... 4

                2.      Discovery Is Needed .......................................................... 5

        B.      Plaintiff Has Adequately Alleged Substantial Similarity ........... 6

                1.      Plot and Sequence of Events ............................................ 7

                        (a)     *Better Half*'s original expression is protectable ................. 7

                        (b)     Defendants stray beyond the four corners of the FAC ........................................................................ 8

                        (c)     Defendants rely on trivial differences ............................. 9

                        (d)     Defendants misapply the *scènes à faire* doctrine ............ 12

                2.      The Themes Are Similar .................................................. 13

                3.      The Characters Are Similar ............................................ 15

                        (a)     Art (*Better Half*) and Tim (*Together*) ............................ 15

                        (b)     Daphne (*Better Half*) and Millie (*Together*) ................... 17

                        (c)     Paul (*Better Half*) and Jamie (*Together*) ....................... 18

                        (d)     Daphne's Parents (*Better Half*) and Tim's Parents (*Together*) ...................................................... 19

                4.      The Moods and Pace Are Similar ................................... 19

                5.      The Settings Are Similar ................................................. 19

                6.      The Dialogue Is Similar ................................................. 20

        C.      The Similarities in Selection and Arrangement Preclude Dismissal .................................................................. 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

V.    PLAINTIFF HAS ADEQUATELY ALLEGED  SECONDARY COPYRIGHT INFRINGEMENT ................................................. 22

VI.    CONCLUSION ............................................................... 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

*Alfred v. Walt Disney Co.*,
821 F. App'x 727 (9th Cir. 2020)....................................................4, 5, 12, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................2

*Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*,
648 F.3d 986 (9th Cir. 2011) .......................................................................3

*Astor-White v. Strong*,
733 F. App'x 407 (9th Cir. 2018) ................................................................5

*Carlini v. Paramount Pictures Corp.*,
2021 WL 911684 (C.D. Cal. Feb. 2, 2021) ...............................................18

*Changing World Films LLC v. Parker*,
2023 WL 8044348 (C.D. Cal. Sept. 12, 2023)....................................passim

*Fleener v. Trinity Broad. Network*,
203 F. Supp. 2d 1142 (C.D. Cal. 2001)..................................................7, 13

*Gilbert v. New Line Prods., Inc.*,
2010 WL 891333 (C.D. Cal. Feb. 17, 2010)................................................6

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022).........................................................................4

*Gregorini v. Apple Inc.*,
2022 WL 522307 (9th Cir. Feb. 22, 2022)..............................................4, 5

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023)....................................................................3, 5

*Hardwell v. Parker*,
2022 WL 16894520 (C.D. Cal. Aug. 25, 2022)...........................................5

*Heim v. Universal Pictures Co.*,
154 F.2d 480 (2d Cir. 1946).......................................................................7

*Hudson v. Universal Studios, Inc.*,
2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008) ...........................................18

*Kelly Toys Holdings, LLC v. Build-A-Bear Workshop, Inc.*,
2024 WL 3469028 (C.D. Cal. July 15, 2024)..........................................4, 5

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*,
391 F. Supp. 3d 959 (N.D. Cal. 2019) ......................................................13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

28

iii

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012).........................................................................4, 12

*Lauter v. Rosenblatt*,
    2017 WL 6205784 (C.D. Cal. Dec. 6, 2017) ...................................................22

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ....................................................................15, 20

*Reed-Union Corp. v. Turtle Wax, Inc.*,
    77 F.3d 909 (7th Cir. 1996) ...............................................................................8

*Segal v. Segel*,
    2022 WL 198699 (S.D. Cal. Jan. 21, 2022) ...........................................4, 13, 20

*Shame on You Prods., Inc. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015)............................................................20

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990)...................................................................passim

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020)...............................................................3, 6, 15

*Smith v. AMC Networks, Inc.*,
    2019 WL 402360 (N.D. Cal. Jan. 31, 2019) .........................................8, 9, 13

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ....................................................................4, 13

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000)..............................................................................3

*Walt Disney Prods. v. Filmation Assocs.*,
    628 F. Supp. 871 (C.D. Cal. 1986)......................................................................6

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007)..............................................................9

*Zindel v. Fox Searchlight Pictures, Inc.*,
    815 F. App'x 158 (9th Cir. 2020)................................................................4, 5, 6


**FEDERAL RULES**

Fed. R. Civ. P. 12.................................................................................................2

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

iv

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Plaintiff StudioFest LLC ("StudioFest") hereby opposes the Motion to Dismiss (Dkt. 34) (the "Motion") filed by Defendants Neon Rated, LLC ("Neon"), William Morris Endeavor Entertainment, LLC ("WME"), Michael Shanks ("Shanks"), Alison Brie ("Brie"), Dave Franco ("Franco") (collectively, "Defendants").

## I.    <u>INTRODUCTION</u>

The Motion turns on a single issue: whether the *Better Half* screenplay and *Together* film are substantially similar.  Defendants do not challenge copyright ownership or access.  Nor could they.  The script was sent directly to Franco's and Brie's agents at WME.  After passing on Plaintiff's project, Franco and Brie went on to produce and star in *Together*—which, just like *Better Half*, centers around a couple who wake up to find their bodies physically fused together as a metaphor for codependency.  The First Amended Complaint ("FAC") pleads numerous, concrete similarities that belie any claim of coincidence or independent creation.

Defendants contend most of the overlap constitutes unprotectable generic concepts or *scènes à faire* and urge the Court to apply the extrinsic test without the benefit of a developed factual record or expert testimony.  **This is precisely what the Ninth Circuit cautions against at the pleading stage**.  Worse, Defendants stray beyond the four corners of the FAC—introducing outside works and disputed facts—which is not appropriate on a motion to dismiss.

But even if the Court were to consider Defendants' backdoor proffer, the Motion fails.  Unable to deny the similarities, Defendants resort to splitting hairs— live mice versus dying rats; an awkward marriage proposal shown offscreen versus onscreen; Spice Girls vinyl records with different album titles; and differing mechanics in invoking Plato's *Symposium*.  These superficial distinctions do nothing to negate the underlying expressive overlap.

Dismissal is improper.  Discovery and expert testimony are needed to aid the Court in distinguishing unprotectable elements from protectable ones, determining

the extent and qualitative importance of the similarities, and comparing works in the different mediums of screenplay and film.

Plaintiff respectfully requests that the Court deny the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff StudioFest is a production, financing, and distribution company that acquired the exclusive rights to the *Better Half* screenplay written by Patrick Phelan in 2019.  (FAC ¶¶ 2, 21.)  In 2020, StudioFest submitted the *Better Half* screenplay and synopsis directly to Franco's and Brie's agents at WME.  (*Id.* ¶¶ 3, 26-27.) They passed on the offer to star in the project.  (*Id.* ¶¶ 3, 28.)

In January 2025, Plaintiff learned that Franco and Brie were producing and starring in *Together*, written and directed by another WME client—Shanks, who is represented by the same agent as Franco.  (*Id.* ¶¶ 4, 31.)  Defendants lifted wholesale creative elements from Plaintiff's screenplay.  (*Id.* ¶ 5.)

*Together* sold to Neon for a reported $17 million in a deal brokered by WME. (*Id.*)  The film was released in theaters in July 2025, and at the time of the filing of the operative complaint, grossed approximately $23 million at the worldwide box office.  (*Id.* ¶¶ 7, 38.)

On May 13, 2025, Plaintiff filed its complaint for copyright infringement.  On July 25, 2025, Defendants filed a motion to dismiss.  On August 22, 2025, Plaintiff filed an amended complaint.  The Court denied as moot Defendants' motion to dismiss.  On September 17, 2025, Defendants filed a motion to dismiss the amended complaint.

## III.    LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), courts must accept as true all the factual allegations in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The critical question is whether, assuming the allegations are true, the plaintiff has stated a plausible claim for relief.  *Id.*  In reviewing the allegations, courts must "construe the pleadings in the light most favorable to the nonmoving

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

party" and "draw[] all reasonable inferences in favor of the plaintiff." *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

## IV.  PLAINTIFF HAS PLED A VALID COPYRIGHT INFRINGEMENT CLAIM

To state a claim for copyright infringement, the plaintiff must plead (1) ownership of a valid copyright; and (2) copying of the protected aspects of the work. *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940 (9th Cir. 2023). The second element may be satisfied by showing that the defendant had "access" to the plaintiff's work and that the two works are "substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *overruled on other grounds*, *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Here, Defendants do not contest ownership or access. Instead, they move to dismiss solely on the ground that the works are not substantially similar as a matter of law. (Mot. at 1:25-28.) That argument fails.

### A.  Defendants' Motion Is Premature

The Ninth Circuit uses a two-part test to determine substantial similarity: the "extrinsic test" and the "intrinsic test." *Hanagami*, 85 F.4th at 941. On a motion to dismiss, only the extrinsic test applies. *Id.* The extrinsic test "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.*

For literary works, courts compare similarities between plots, themes, dialogue, mood, setting, pace, characters, and sequence of events after filtering out unprotectable elements, such as ideas and concepts, public-domain material, and *scènes à faire* (stock scenes or features that necessarily flow from the premise). *Changing World Films LLC v. Parker*, 2023 WL 8044348, at *4 (C.D. Cal. Sept. 12, 2023). "Although copyright law does not protect an 'idea,' it protects the 'expression' of the idea." *Id.*

Even when individual elements are not protected, the "[o]riginal selection,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

coordination, and arrangement of unprotectible elements may be protectible expression." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012), *abrogated on other grounds as recognized by Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022).

Here, Plaintiff adequately pleads objective similarities between the works' expressive elements—plot, themes, characters, sequence of events, setting, mood and pace, and dialogue. (FAC ¶¶ 40-88.)  Plaintiff also alleges that *Together* copies *Better Half*'s selection and arrangement of these elements. (*Id.* ¶¶ 5, 39, 92.)  Still Defendants contend most of the alleged similarities are unprotectable generic concepts or *scènes à faire*.  **But this process of analytical dissection (i.e., separating unprotectable elements from protectable ones) is generally a fact-intensive inquiry that cannot be resolved at the pleading stage**.  *Segal v. Segel*, 2022 WL 198699, at *13 (S.D. Cal. Jan. 21, 2022); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) ("The extrinsic test requires 'analytical dissection of a work *and expert testimony*.'") (emphasis added); *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) ("[A]t this stage of the litigation, it is difficult to know whether such elements are indeed unprotectible material.").

### 1.    Dismissal Is Disfavored

It is reversible error for a court to dismiss a copyright infringement claim for lack of substantial similarity if reasonable minds could differ on the issue.  *Zindel v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159-60 (9th Cir. 2020).  As this Court has recognized, "**it is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage**." *Kelly Toys Holdings, LLC v. Build-A-Bear Workshop, Inc.*, 2024 WL 3469028, at *8 (C.D. Cal. July 15, 2024) (emphasis added); *see also Zindel*, 815 F. App'x at 159 (instructing courts to be "cautious before dismissing a case for lack of substantial similarity on a motion to dismiss"); *Gregorini v. Apple Inc.*, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022) ("[E]ven summary judgment is not highly favored on questions of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

substantial similarity in copyright cases.") (cleaned up); *Astor-White v. Strong*, 733 F. App'x 407, 408 (9th Cir. 2018) (Wardlaw, J., concurring) ("[D]ismissal of a complaint for lack of substantial similarity before any discovery is virtually unheard of.").

Dismissal is disfavored given that "[i]n many cases, application of the extrinsic test requires analytical dissection of a work and expert testimony because most judges are not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity." *Kelly Toys*, 2024 WL 3469028, at *8. The Ninth Circuit has only "occasionally affirmed the dismissal of copyright infringement claims under Rule 12(b)(6) when '**nothing disclosed during discovery' could change the court's conclusion that the works are not substantially similar**." *Hanagami*, 85 F.4th at 945 (emphasis added).

### 2.  <u>Discovery Is Needed</u>

Discovery is particularly needed here because the Motion turns on Defendants' assertion that the "vast majority of alleged similarities between the works are unprotectable elements." (Mot. at i:14-17.)  But determining whether such elements are indeed unprotectable is difficult to know at this stage of the litigation without the aid of expert testimony. *See, e.g.*, *Alfred*, 821 F. App'x at 729 (reversing dismissal of complaint for failure to allege substantial similarity where expert testimony could help filter out unprotectable elements); *Gregorini*, 2022 WL 522307, at *1 (same); *Zindel*, 815 F. App'x at 160 (same); *Hardwell v. Parker*, 2022 WL 16894520, at *5 (C.D. Cal. Aug. 25, 2022) (denying motion to dismiss where expert testimony could assist the court in filtering).

Development of the factual record and expert testimony would aid the Court in "determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums" of screenplay and film. *Gregorini*, 2022 WL 522307, at *1; *see also Alfred*, 821 F. App'x at 729 (finding that "expert testimony would aid in determining whether the similarities Plaintiffs

5

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

identify are qualitatively significant"); *Changing World*, 2023 WL 8044348, at
*7 ("[W]hether fleshing a screenplay out into a film requires the addition of themes
and subplots not present in the screenplay" is a topic best addressed by additional
evidence).

Further, the FAC alleges that drafts of the *Together* screenplay infringe
Plaintiff's work.  (FAC ¶ 32.)  Plaintiff requires Defendants' scripts to develop this
independent claim of copyright infringement.  *Gilbert v. New Line Prods., Inc.*,
2010 WL 891333, at *1 (C.D. Cal. Feb. 17, 2010) ("The Court agrees with Plaintiff
that her screenplay claims remain viable, even after the Movie has been foun[d] not
to infringe."); *Walt Disney Prods. v. Filmation Assocs.,* 628 F. Supp. 871, 876-77
(C.D. Cal. 1986) (finding that unpublished screenplays and other articles created in
the production of a movie can give rise to copyright infringement).[1]

## B.    <u>Plaintiff Has Adequately Alleged Substantial Similarity</u>

Dismissal on the ground of substantial similarity "is warranted only if, 'as a
matter of law[,] the similarities between . . . works are only in uncopyrightable
material or are de minimis." *Zindel*, 815 F. App'x at 159.  "Even if a copied portion
be relatively small in proportion to the entire work, if qualitatively important, the
finder of fact may properly find substantial similarity."  *Shaw v. Lindheim*, 919 F.2d
1353, 1363 (9th Cir. 1990), *overruled on other grounds*, *Skidmore*, 952 F.3d 1051.

A finding of substantial similarity is not required as to all categories.
*Changing World*, 2023 WL 8044348, at *8 (finding that plot and themes were
similar enough to preclude dismissal even though characters were not substantially
similar and the remaining elements did not demonstrate a striking resemblance).

---

[1] To the extent the Court requires additional pleading showing that Shanks' earlier
scripts were published, Plaintiff can amend and, by offer of proof, show that he
submitted drafts to Screen Australia in or around October 2020, resulting in a Screen
Australia development-funding award.

Miller Barondess, LLP
ATTORNEYS AT LAW
2121 Avenue of the Stars, Suite 2600  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1.    **Plot and Sequence of Events**

Plaintiff alleges 20 substantially similar plot points and sequence of events that appear in both *Better Half* and *Together*.  (FAC ¶¶ 40-45, 64-77.)  The plots share enough details to give rise to a triable question of substantial similarity.  *See Changing World*, 2023 WL 8044348, at *6 (finding only four similarities in plots met threshold of substantial similarity); *Fleener v. Trinity Broad. Network*, 203 F. Supp. 2d 1142, 1145-46 (C.D. Cal. 2001) (six common elements were sufficient to permit a jury to find substantial similarity).

Both works center around a couple who wake up to find their bodies physically fused together as a metaphor for codependency.  Contrary to Defendants' assertion, Plaintiff does not claim a "monopol[y]" over the general concept of conjoined bodies.  (Mot. at 1:14-24.)  Rather, Plaintiff alleges that Defendants lifted concrete expressive elements far beyond any abstract idea—creative choices ranging from the invocation and inversion of Plato's *Symposium*, to the inclusion of a *Spice Girls* motif, visual imagery of rodents foreshadowing the protagonists' fates, awkward marriage proposals emasculating the male lead, physical attachment at the genitals, and a plot twist in which a supporting character unexpectedly turns out to be gay, among numerous others.  These idiosyncratic details support a finding of substantial similarity.  *Heim v. Universal Pictures Co.*, 154 F.2d 480, 488 (2d Cir. 1946) (copying might be demonstrated where a single brief phrase is so idiosyncratic as to preclude coincidence).

(a)    ***Better Half*'s original expression is protectable**

Defendants contend the premise is unprotectable because it was "borrowed from Plato's *Symposium*."  (Mot. at 7:16-18.)  Yet the works' premise is exactly the **opposite** of Aristophanes' myth in the *Symposium*, which describes humans as originally conjoined beings who were then split apart, leaving them searching for their missing half.  *Better Half* and *Together* invert the myth by having the protagonists begin as detached individuals who become physically fused and spend

7

the entire narrative struggling to part, not come together.  (FAC ¶¶ 41, 47, 75.)

Even if *Better Half* was inspired by the *Symposium*, Phelan's original expression is protectable.  *See Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 914 (7th Cir. 1996) (explaining that many works, including *West Side Story* take inspiration from Shakespeare's *Romeo and Juliet*, "[b]ut this did not place *West Side Story* itself in the public domain, for it has exposition, language, and music different from Shakespeare's").

Defendants perform backflips trying to argue that this inversion applies only to *Better Half* and not *Together*.  (Mot. at 8:9-11.)  Defendants assert that "*Together* follows a physically detached couple attempting to *stop* a force from merging them into one person, and for the vast majority of the film they are *not* connected."  (*Id.* at 8:11-13.)  This distinction goes nowhere—the mechanics of when and how the physical merger occurs do not alter the fundamental narrative inversion: the entire plot of *Together*—just like *Better Half*—is driven by the characters' struggle against attachment.

**(b)    <u>Defendants stray beyond the four corners of the FAC</u>**

Defendants attempt to bolster their argument that the premise is generic by going beyond the four corners of the FAC and introducing other works—*A Folded Ocean* (2023) and *Two* (2021).[2]  (Mot. at 8:1-8.)  This backdoor proffer concedes that the Court cannot rule on substantial similarity without considering extrinsic evidence.  By asking the Court to weigh and compare outside material, Defendants effectively seek summary judgment on disputed issues.  *Smith v. AMC Networks,*

---

[2] Defendants also introduce extrinsic facts by subtly inserting into their film synopsis that "Michael Shanks wrote the *Together* screenplay in **2019**."  (Mot. at 3:11-12 (emphasis added).)  Defendants previously alluded to an independent creation defense in their original motion, and Plaintiff has repeatedly requested the purported 2019 draft and subsequent revisions.  Defendants have stonewalled.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1  *Inc.*, 2019 WL 402360, at *6-7 (N.D. Cal. Jan. 31, 2019).[3]

2      In *Smith*, the defendants, just like Defendants here, moved to dismiss the

3  copyright claim for lack of substantial similarity and cited outside works purporting

4  to show generic concepts.  2019 WL 402360 at *4, 6-7.  Then-District Judge, now-

5  Circuit Judge Lucy H. Koh declined to take judicial notice of the supposedly generic

6  concepts and denied Defendants' motion to dismiss because the court could not

7  apply the extrinsic test due to an insufficient record and lack of expert testimony.

8  *Id.*

9      Regardless, the fact that two other works—postdating *Better Half*—may bear

10  a superficial resemblance to Plaintiff's premise does not render it generic or

11  unprotectable.  *See Changing World*, 2023 WL 8044348, at *5 n.5 ("Defendants

12  provide no authority (and the Court is aware of none), however, to support the

13  notion that the creation of the same storyline twice transforms it into a *scène à faire*

14  or otherwise makes it unprotectable.").

15      Even if the Court were to consider *A Folded Ocean* and *Two*, these works

16  undermine Defendants' position.[4]  Neither film contains the numerous similarities

17  alleged in the complaint that Defendants try to write off as common tropes, *scènes à*

18  *faire* or otherwise unprotectable.

19          **(c)    Defendants rely on trivial differences**

20      Defendants are splitting hairs in their attempt to distinguish *Together* from

21  *Better Half*.  For example, Defendants point to the fact that *Better Half* features a

22

23  [3] Defendants' counsel tried the same tactic in *Smith* and relied on the same authority
    the Motion cites to here: *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal.

24  2007).  (Mot. at 8 n.3.)  The *Smith* court expressly disagreed with *Zella* (among
    other cases) finding that these non-binding cases "offer little analysis" for "why

25  certain elements are generic or scenes-a-faire."  2019 WL 402360, at *6.

26  [4] Defendants mischaracterize *Two* as a story about a "couple," when in fact the

27  protagonists are conjoined twins who were surgically separated in childhood and
    later forcibly sewn back together by their father.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

"still-alive mouse caught in a trap" while *Together* depicts "a rotting rat king in a light fixture." (Mot. at 12:26-13:3.) As an initial matter, *Better Half* features two mice (Dkt. 21-2 (Freeman Ex. 1) at 61), and in *Together* one of the rats is still alive, as evidenced by the audible shriek (Dkt. 21-4 (Freeman Ex. 3) at 14:32). These minor distinctions do not detract from the fact that **both works use rodents—out of all possible animal species—that are stuck together as a visual motif to foreshadow the protagonists' fates**.

Similarly, Defendants gloss over the fact that **both works feature a character who is overtly obsessed with the Spice Girls, reference the exact same song ("2 Become 1"), and feature a Spice Girls vinyl record—as opposed to a CD—that one of the protagonists pulls out of a storage box**. Defendants attempt to distinguish the similarities by noting that *Better Half* showcases the *Spiceworld* album while *Together* features the *Spice* album (Mot. at 11:11-15)—a difference without a distinction. Defendants also try to dismiss the Spice Girls "2 Become 1" song choice as "fitting" and somehow inevitable for a story about two conjoined people. (Mot. at 11:6-19.) But this argument ignores that there are countless other songs with similar themes which could have been selected, such as Jewel's "2 Become One," The Beatles' "Come Together," Frank Sinatra's "I've Got You Under My Skin," The Turtles' "So Happy Together," or Elvis Presley's "Stuck On You," among others.

Defendants ask the Court to look past the fact that **in both works the protagonists play a vinyl record and dance together in a culminating scene where they finally accept their conjoined existence**. (FAC ¶¶ 45, 77.) Defendants contend the scenes are "nothing alike" because *Better Half* "features a comical montage" while *Together* presents an "emotional scene." (Mot. at 11:2-5.) Wrong. Both scenes fall within the romantic comedy genre, and like *Better Half*, the protagonists in *Together* end up committing and falling in love. Plaintiff will present expert testimony to this effect, and produce Defendants' own statements

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   confirming as much. (Declaration of Daniel S. Miller ("Miller Decl.") ¶ 2.)

2   Defendants also attempt to minimize the **parallel awkward marriage**

3   **proposals that emasculate the male protagonists** by pointing out that in *Better*

4   *Half* these proposals happen offscreen while in *Together* the proposal is on-screen.

5   (Mot. at 12:7-11.)  And Defendants try to downplay the fact that **in both works the**

6   **characters discuss using a chainsaw as a detachment device and fight about**

7   **going to the hospital.**  (FAC ¶ 76.)  Defendants ask the Court to discount these

8   similarities because in *Together* the saw is actually used and the protagonists never

9   make it to the hospital.  (Mot. at 11:25-12:6.)  But the Ninth Circuit has made clear

10  that "[n]o plagiarist can excuse the wrong by showing how much of his work he did

11  not pirate."  *Shaw*, 919 F.2d at 1362.

12  Further, Defendants contend that the similarity in the second act of both

13  works—where **one of the main characters tries to make it in time for their**

14  **pivotal career opportunity but is unable to get to where they need to be due to**

15  **their physical merging**—is "misleading."  (Mot. at 12:12-14.)  Yet it is

16  Defendants' own characterization that is misleading by suggesting that Tim's

17  "trance," as opposed to the merging process, prevents him from making his gig.  (*Id*.

18  at 12:16-18.)  In reality, Tim's body is involuntarily drawn back to Millie because

19  the physical merging process has already begun.

20  Defendants also argue that Plaintiff's allegation that the protagonists in both

21  works "start to control each other's body parts" and "experience seizure like

22  movements" is a "mischaracterization."  Not so.  The *Better Half* screenplay

23  explicitly states that "[t]o an outside observer, it looks like two epileptic **seizures**."

24  (Dkt. 21-2 at 60 (emphasis added).)  And in *Together*, Millie asks Tim: "maybe it

25  was like a **seizure**" after she starts involuntarily convulsing.  (Dkt. 21-4 at 1:06:12.)

26  Finally, Defendants contend that the **bathroom scenes** "have virtually

27  nothing in common" even though in both works the characters are **attached by the**

28  **genitals and hide from another character who is waiting just outside as the**

Miller Barondess, LLP
Attorneys at Law
2121 Avenue of the Stars, Suite 2600  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

11

**protagonists try to detach**. (Mot. at 10:10-11.) *Better Half* makes clear that the protagonists are attached by the genitals because when the characters first realize they are conjoined, Daphne references her "sheath" and Art references his "saber" followed by Daphne asking him, "Did you use superglue for lube or something?" (Dkt. 21-2 at 19.)

Defendants' reliance on these superficial differences misses the mark. *L.A. Printex*, 676 F.3d at 851 ("It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown."). The law does not require that the works be identical. Courts routinely find substantial similarity despite significant differences in the works. *See, e.g.*, *Alfred*, 821 F. App'x at 729 (reversing dismissal for lack of substantial similarity even though "[t]o be sure, there are striking differences between the two works"); *Changing World*, 2023 WL 8044348, at *6 (denying motion to dismiss where plots were similar enough despite that they also "differ[ed] in significant aspects").

**(d)    Defendants misapply the *scènes à faire* doctrine**

Defendants contend a host of other similarities are *scènes à faire*, including a supernatural merging incited by the male protagonist, a torrential downpour of rain that forces the couple to spend the night together[5], struggling to navigate daily life as the attachment progresses, searching for ways to detach, attempting to conceal the attachment from others, developing an unexpected and deeper connection, discussing the use of a chainsaw and fighting about going to the hospital. (Mot. at 8:14-10:2, 11:22-25.) Defendants claim these similarities are unprotectable because they "naturally flow from the unprotectable premise of two people stuck together in

---

[5] Defendants try to obscure this similarity by characterizing rain as a common dramatic device, but the allegation concerns its specific narrative function: forcing the couple into an overnight stay that immediately precedes the merging. (Mot. at 9:20-10:2.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  some manner." (*Id.* at 8:14-15.)  This argument misstates the law and ignores the

2  breadth of creative expression available in literary works.

3  The *scènes à faire* doctrine excludes from protection only those elements that

4  are "**indispensable** and naturally associated with the treatment of a given idea."

5  *Swirsky*, 376 F.3d at 850 (emphasis added); *Fleener*, 203 F. Supp. 2d at 1150-51

6  (finding defendants failed to fulfill their burden to establish elements were

7  "standard, much less indispensable").

8  Defendants provide no justification as to why such elements *necessarily* flow

9  from the premise of two people being physically conjoined.  Courts in this circuit

10  have declined to filter out elements that are arguably more generic or *scènes à faire*.

11  *See, e.g.*, *Segal*, 2022 WL 198699, at *13 (people in comas, characters with psychic

12  abilities, and chases and fights); *Smith*, 2019 WL 402360, at *4 (featuring pirates in

13  a fictional work that involves bodies of water, using an elevator to hide or escape,

14  and using fire to destroy enemies).

15  Moreover, Defendants ignore that there are countless ways to tell a story

16  about conjoined individuals that do not involve these specific creative choices.  *See,*

17  *e.g.*, *Shaw*, 919 F.2d at 1360 ("[T]here is an infinite variety of novel or creative

18  expression available to the author of a book, script, play, or motion picture based on

19  a preexisting idea"); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391

20  F. Supp. 3d 959, 967 (N.D. Cal. 2019) ("[W]here there is 'a wide range of

21  expression (for example, there are gazillions of ways to make an aliens-attack

22  movie),' the copyright protection is 'broad.'").

23  ## 2.    The Themes Are Similar

24  In both works, the themes of codependency and the perils of enmeshment are

25  explored through the same inversion of Plato's *Symposium*.  Each work employs the

26  *Symposium* as a storytelling device, introduced by a male teacher who recounts the

27  myth that humans were once whole beings split apart and condemned to search for

28  their missing halves.  But the myth is invoked only to be inverted: rather than

Miller Barondess, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

celebrating reunion, *Better Half* and *Together* focus on separation. This reversal transforms the classical tale of completion into a modern parable about losing one's identity within romantic attachment. Defendants contend these themes are *scènes à faire*. Yet there are myriad ways to explore them without invoking Plato's *Symposium*.

Both works also explore the themes of autonomy and lack of accomplishment in career in a similar way—specifically, through male protagonists who have lost their sense of self within their relationships and sidelined their professional ambitions. Defendants contend these themes are unprotectable "abstract concepts." (Mot. at 13:14-17.) But even general themes are protectable when expressed in an original manner. *See Changing World*, 2023 WL 8044348, at *7 (finding substantial similarity in the "theme of redemption" where both works depicted "an otherwise law-abiding main character [who] turns to vigilante justice, but then ultimately allows the police officer to go free").

In addition, both works explore the theme of how romantic relationships are haunted by the unresolved imprint of parental relationships. In each, the parental specter operates as an emotional barrier that undermines intimacy. In *Better Half*, Daphne's fear of serious relationships stems from her parents' unhealthy dynamic. And in *Together*, Tim's recurring memories of his parents' horrific end impacts his relationship with Millie. Defendants point to differences in the parental relationships, but those distinctions do not diminish the shared thematic core. *See Shaw*, 919 F.2d at 1362 (finding that differences in the works did "little to erode the similarity between the central themes").

Finally, both works address the theme of how suppressing aspects of oneself can keep a relationship in stasis. In *Better Half*, Art subjugates his own interests to those of his girlfriends, becoming a "different man" in each relationship. In *Together*, Tim experiences the same loss of self in his relationship with Millie. In both works, the forced fusion that occurs operates as a kind of karmic punishment

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   for these flaws, compelling the protagonists to confront their emotional

2   shortcomings.

### 3.    The Characters Are Similar

4       Characters are sufficiently similar when "the totality of similarities between

5   the two characters goes beyond the necessities of the . . . theme and belies any claim

6   of literary accident." *Shaw*, 919 F.2d at 1363 (finding substantial similarity

7   supported where main characters are both well dressed, wealthy, self-assured and

8   have expensive tastes).  Even where individual character traits are generic or

9   constitute *scènes à faire*, the presence of many such similarities and the common

10  patterns in which they arise can satisfy the extrinsic test.  *Metcalf v. Bochco*, 294

11  F.3d 1069, 1073-74 (9th Cir. 2002), *overruled on other grounds*, *Skidmore*, 952

12  F.3d 1051 (considering the characters' age, race, physique, among other traits were

13  not protectable when considered individually but in combination supported a finding

14  of substantial similarity).

### (a)    Art (*Better Half*) and Tim (*Together*)

16      Art and Tim are sensitive, soft-spoken men in their 30s who are emotionally

17  needy, dependent on their partners and stagnant in their careers.  Both have

18  sidelined their professional ambitions to support their partners—an expressive trait

19  Defendants themselves concede, acknowledging that Art "subjugates his interests to

20  those of his girlfriends" (Mot. at 15:10-11) and Tim "put his career on hold for his

21  fiancée's" (Dkt. 23-1 at 17:8-9).

22      This parallel is underscored early on in both works.  In *Together* Millie's

23  brother mocks Tim for saying he must "check in with Millie" before going on tour.

24  The brother jokes, "When you started dating my sister, I thought you might make

25  her cooler.  Instead, she's just made you—" before Tim cuts him off and grows

26  defensive.  Millie's brother then delivers the more pointed observation: "When I die,

27  I don't want someone else's life flashing before my eyes."  (Dkt. 21-4 at 7:05-7:28.)

28      Similarly, in *Better Half*, Paul observes that each of Art's girlfriends "made

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

[him] a *different* man." He tells Art, "Every woman you date, you transform into a new person. What happened to your dreams of being an archaeologist?" Art responds, "They eroded." (Dkt. 21-2 at 6.)

At the outset, Art and Tim are subjected to a demasculinization through awkward marriage proposals. In *Better Half*, Art breaks down in tears in front of his class because his girlfriend left him after he proposed. In *Together*, Millie awkwardly proposes to him in front of their friends, and he sheepishly says yes after an uncomfortable delay.

In both works, the male lead's dependence on women is framed through maternal imagery. Defendants contend this is "a generic trope" without providing any justification for that contention and accuse Plaintiff of "fail[ing] to list what 'imagery' it refers to." (Mot. at 16:11-13.) But the FAC provides concrete examples:

> For example, in *Better Half*, the female protagonist surmises that Art was "coddled too much" by his mother and has spent his adult life trying to fill that void. She even speculates that one of his girlfriends probably dumped him after he mistakenly called her "mom," which Art concedes. In *Together*, the female protagonist exclaims that she cannot make every decision for Tim and she's not his mother even if she feels like it.

(FAC ¶ 53.)

Both Art and Tim also happen to be serious collectors of vinyl records and store their collections in boxes. In fact, Art owns multiple Spice Girls records, and Tim owns a copy which he gifted to Millie.

And both male protagonists jeopardize the female lead's career. Defendants contend "the scenes referenced have nothing in common," but they cite the wrong portion of *Better Half*. (Mot. at 16:3-8.) In *Better Half*, rather than remaining hidden during Daphne's interview, Art's rage overtakes him and he starts a fight with Paul as Daphne pleads with him to stop. (Dkt. 21-2 at 44-47.) In *Together*, Tim's erratic behavior likewise compromises Millie's new teaching position when

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

16

1  he appears at her school in a possessed, disoriented state.

2  Defendants also argue that the fact that both Art and Tim "seek[] to

3  understand how the fusion occurred" is a *scène à faire* (Mot at 15:24-26), but they

4  omit the remainder of the allegation which explains that the similarity lies in the

5  distinct character roles assigned to each gender.  The male protagonists are

6  portrayed as fixated on discovering how the fusion occurred, while the female

7  protagonists show little interest in its origin and focus instead on ending it.  (FAC ¶

8  54.)

9  In addition, Defendants contend that Art's and Tim's character arcs are not

10  alike because by the end Art "realizes he does not need a romantic relationship to be

11  happy" while Tim "goes from resentful and detached to accepting complete

12  codependency by merging with Millie into one being."  (Mot. at 15:15-18.)  But the

13  final scene of *Better Half* shows Art going back to the bar where he met Daphne,

14  and they end up leaving together.  (Dkt. 21-2 at 93-94.)

15  **(b)    Daphne (*Better Half*) and Millie (*Together*)**

16  Daphne and Millie are heterosexual women in their 30s who are ambitious,

17  assertive, career-driven, and control the direction of their relationships.  Each is

18  portrayed as the more pragmatic partner, focused on problem-solving rather than

19  introspection.  For example, in *Better Half*, when Art suggests his prayers to Zeus

20  may have caused the fusion, Daphne tells him not to "waste [her] time" and asks

21  where he keeps his knives so they can cut the attachment.  She proceeds to take a

22  blade to their skin, but when the pain is too much, she immediately searches for

23  another solution.  (Dkt. 21-2 at 21-24.)  Similarly, in *Together*, when Tim speculates

24  that something happened in the cave and mentions the missing hikers, Millie

25  dismisses him.  The next morning, after the connection has progressed, she ties Tim

26  to a chair and saws through the attachment.  (Dkt. 21-4 at 1:06:21-1:16:24.)

27  Defendants emphasize differences in the women's careers and relationship

28  status, but those distinctions do not diminish their expressive similarities, including

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

17

1  their parallel character arcs.  In both works, the forced fusion breeds resentment

2  rooted in a sense of being trapped with someone they view as beneath them.  Yet by

3  the end, each woman accepts the bond she initially resisted—ultimately coming to

4  respect the male lead.

5  ### (c)  Paul (*Better Half*) and Jamie (*Together*)

6      Defendants' treatment of Paul and Jaime relies on sleight of hand.  They cite

7  inapposite cases addressing "over-the-top" or openly gay "best friend" stock

8  characters to argue that any overlap is unprotectable.  (Mot. at 17:27-18:6 (citing

9  *Carlini v. Paramount Pictures Corp.*, 2021 WL 911684, at *11 (C.D. Cal. Feb. 2,

10  2021); *Hudson v. Universal Studios, Inc.*, 2008 WL 4701488, at *6 (S.D.N.Y. Oct.

11  23, 2008)).)  Paul and Jamie are the opposite of flamboyant or openly gay.  They are

12  initially presented as heterosexual characters who appear to pose a romantic threat to

13  the male lead's relationship, only later to be revealed as gay.  (FAC ¶ 60.)  This plot

14  twist—the unexpected revelation that they are gay—is a unique and striking

15  similarity that Defendants tellingly ignore.

16      In fact, *Carlini* supports Plaintiff, not Defendants, because the court

17  recognized that a specific sublot about a supporting character "who unexpectedly

18  turns out to be gay—is arguably unique and substantially similar."  2021 WL

19  911684, at *11.  That is precisely the similarity here.

20      Paul and Jamie also function as confidants for the protagonists' relationship

21  troubles.  In *Better Half*, Paul is Art's best friend whom Art confides in about his

22  breakup and romantic frustrations.  In *Together*, Jamie is Millie's work colleague

23  and neighbor, and she turns to him to discuss her fight with Tim and the problems in

24  their relationship.

25      Both Paul and Jamie are portrayed not only as sexually slippery but also

26  morally slippery.  In *Better Half*, the reader calls into question whether Paul is truly

27  Art's friend, while in *Together*, the audience wonders whether Jamie is merely a

28  helpful neighbor or whether something more sinister lies beneath the surface.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

18

**(d)** **Daphne's Parents (*Better Half*) and Tim's Parents**
**(*Together*)**

Defendants dismiss the parental figures as "generic" and fundamentally different, arguing that Daphne's parents appear in a dinner scene while Tim's parents are shown only in flashback. (Mot. at 18:13-24.) That framing ignores what the FAC actually pleads: in both works the parents function as an outsized, ever-present "parental specter" that shapes the protagonists' relationship dynamics. (FAC ¶ 63.) In *Better Half*, Daphne's controlling father and unfulfilled mother are dramatized in a set-piece dinner where Art witnesses the corrosive pattern that molded Daphne's guardedness. In *Together*, Tim's memories of his parents' horrific end recur to explain Tim's passivity. Though presented differently (a live dinner scene versus recurring memory sequences), the expressive role is the same: the parents cast a long shadow that catalyzes key relational beats in the protagonists' arcs.

### 4. The Moods and Pace Are Similar

Both works are largely chronological, paced as full-length features. Each is a character-driven story that combines different genres. *Better Half* is a romantic comedy ("rom-com") with body horror elements while *Together* blends body horror with rom-com elements.

Defendants claim Plaintiff "provides no support for this" (Mot. at 20:18-20), but the FAC explicitly alleges that "*Together* ends as a rom-com with the couple dancing to a Spice Girls vinyl record" (FAC ¶ 84). The FAC also cites to Defendants' own public interview statements calling *Together* a "horror com-rom" and film reviews recognizing that the film "seamlessly blends body horror and romantic comedy." (*Id.* ¶ 83.)

### 5. The Settings Are Similar

Both works are set in the present-day United States and largely take place inside the home where the protagonists struggle to detach before ultimately

19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

accepting their conjoined existence in a pivotal dance scene.  Both works also include scenes at a school where one of the protagonists works as a teacher, and at a medical setting where a doctor fails to treat the condition.  Defendants contend schools and medical settings are *scènes à faire*, but the films cited by Defendants involving conjoined individuals—*A Folded Ocean* and *Two*—do not support that position as neither used those locations.

### 6.    The Dialogue Is Similar

The FAC identifies concrete overlap in dialogue.  (FAC ¶¶ 85-88.)  Both works introduce Plato's *Symposium* through a teacher, using the same pedagogical tone to present Aristophanes' myth as a learning moment.  In each, the teacher explains that human beings originally had two faces and eight limbs, but Zeus split them in half because the gods feared their power.

Both works also include references to the Spice Girls, including the same song "2 Become 1."  Defendants cite *Shame on You Productions, Inc. v. Banks*, 120 F. Supp. 3d 1123, 1151 n.142 (C.D. Cal. 2015), in support of their contention that pop culture references are unprotectable.  But the court in *Shame on You* specifically referred to the plot idea of a "walk of shame" as being an unprotectable concept.  *Id.* at 1151.

Here, the references to both Plato's *Symposium* and the Spice Girls are sufficiently idiosyncratic as to raise an inference of similarity.  *See Segal*, 2022 WL 198699, at *14.

### C.    The Similarities in Selection and Arrangement Preclude Dismissal

Even if the Court were to find none of the elements protectable individually, the fact that both works contain all these similarities gives rise to a triable question of substantial similarity.  *Shaw*, 919 F.2d at 1363; *see also Metcalf*, 294 F.3d at 1074 ("[I]nfringement can 'be based on original selection and arrangement of unprotected elements.'").

"Where plot is . . . properly defined as 'the "sequence of events" by which the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

20

author expresses his "theme" or "idea,"' it constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both plaintiff's and defendant's works." *Shaw*, 919 F.2d at 1363. Differences between the works do not defeat a selection-and-arrangement claim where the alleged similarities are more than de minimis. *Alfred*, 821 F. App'x at 729 ("To be sure, there are striking differences between the two works, as well—but the selection and arrangement of the similarities between them is more than de minimis.").

*Together* copies *Better Half*'s original selection and arrangement, as evidenced by numerous shared elements, including but not limited to:

- Opening with a visual motif of a conjoined creature foreshadowing the protagonists' fates;
- Awkward marriage proposals that emasculate the male lead;
- Rodents as a visual metaphor for being stuck together;
- A torrential downpour that forces the couple to spend the night together;
- Invoking Plato's *Symposium* only to invert its myth;
- Featuring a character obsessed with the Spice Girls who has their album on vinyl, with references to the same song "2 Become 1";
- Exploring the parental specter as an emotional obstacle to intimacy;
- Depicting the physical attachment progressing as the protagonists desperately search for ways to separate—from medical intervention to chainsaws;
- A bathroom sequence where the protagonists are attached at the genitals and hide from another character waiting outside;
- Calling back the opening visual motif through a crude drawing;
- A plot twist in which a male supporting character unexpectedly turns out to be gay; and
- A climactic scene in which the protagonists play a vinyl record and dance together

Defendants contend Plaintiff does not satisfy the selection-and-arrangement

21

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

1  standard because these plot points appear in different order.  (Mot. at 21:21-23.)

2  That argument is vitiated by *Shaw*.  There, the Ninth Circuit found that the

3  plaintiff's list of similarities was "for the most part, a compilation of 'random

4  similarities scattered throughout the works'" that "misrepent[ed] the order and

5  similarity" of the sequence of events.   919 F.2d at 1362-63.  Nevertheless, the court

6  found the works to be substantially similar under a selection-and-arrangement

7  theory because the plots "parallel[ed] each other."  *Id.* at 1363.

8     Here, the extensive parallels easily exceed the de minimis threshold.  At a

9  minimum, reasonable minds could differ on the issue of substantial similarity.

10 ## V.   PLAINTIFF HAS ADEQUATELY ALLEGED  SECONDARY

11 ## COPYRIGHT INFRINGEMENT

12    A plaintiff has a claim for contributory infringement when a defendant

13 "intentionally induced or encouraged direct infringement."  *Lauter v. Rosenblatt*,

14 2017 WL 6205784, at *5 (C.D. Cal. Dec. 6, 2017).  Even if a defendant lacks actual

15 knowledge of infringement, it is liable for vicarious infringement if it "(1) has the

16 right and ability to control the infringing party's infringing activity, and (2) derives a

17 direct financial benefit from the activity."

18    Here, the FAC alleges on information and belief that "Defendants engaged in

19 an intentional scheme to copy the *Better Half* screenplay, and that Franco and Brie

20 rejected StudioFest's offer because they wanted to produce the film themselves and

21 have WME package the project with one of the agency's own writers."  (FAC ¶ 29.)

22 The FAC further alleges that WME arranged a meeting between Franco and

23 Shanks—both of whom are represented by the same agent who had received the

24 *Better Half* screenplay.  (*Id.* ¶¶ 26-27, 31.)

25    Defendants have directly benefited from their infringement, with *Together*

26 selling to Neon for a reported $17 million in a deal brokered by WME.  (*Id.* ¶¶ 6,

27 36.)  The film was released in theaters in July 2025.  (*Id.* ¶¶ 7, 38.)

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the Motion, and in the alternative, grant leave to amend.

DATED:  October 15, 2025          MILLER BARONDESS, LLP


By:   ___/s/ Daniel S. Miller_____
        DANIEL S. MILLER
        Attorneys for Plaintiff
        StudioFest LLC

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## **CERTIFICATE OF COMPLIANCE**

2        The undersigned, counsel of record for Plaintiff, certifies that this brief

3  contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

4

5  DATED:  October 15, 2025        MILLER BARONDESS, LLP

6

7

8                        By:    */s/ Daniel S. Miller*

9                               DANIEL S. MILLER

10                             Attorneys for Plaintiff
StudioFest LLC

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT