NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
ADRIAN F. VALLENS (State Bar No. 332013)
  adrianvallens@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
NEON RATED, LLC; WILLIAM MORRIS
ENDEAVOR ENTERTAINMENT, LLC;
MICHAEL SHANKS; ALISON BRIE; and
DAVE FRANCO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDIOFEST LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, a California limited liability company; DAVE FRANCO, an individual; ALISON BRIE, an individual; MICHAEL SHANKS, an individual; NEON RATED, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-04294-JLS-SK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   December 12, 2025<br>Time:   10:30 a.m.<br>Dept.:  8A |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. COURTS ROUTINELY ASSESS SIMILARITY AT THIS STAGE ........... 2

III. PLAINTIFF APPLIES THE WRONG LEGAL STANDARDS ................... 3

IV. THE WORKS ARE NOT SUBSTANTIALLY SIMILAR............................ 4

    A. Plaintiff Refuses to Filter Unprotectable Elements............................ 4

    B. Plaintiff Repeatedly Misapplies the Extrinsic Test ........................... 5

    C. The Plots and Sequence of Events Are Not Similar.......................... 6

    D. There Are No Similar Characters ....................................................... 8

        1. Plaintiff Fails to Explain its Shifting Allegations ...................... 8

        2. Art and Tim ................................................................................ 8

        3. Daphne and Millie ..................................................................... 9

        4. Paul and Jamie........................................................................... 9

        5. Parental Characters.................................................................. 10

    E. The Settings Are Not Similar ............................................................ 10

    F. The Themes Are Not Similar ............................................................ 10

    G. There Is No Similar Dialogue ........................................................... 11

    H. The Moods and Pace Are Not Similar.............................................. 12

V. PLAINTIFF'S SELECTION-AND-ARRANGEMENT THEORY DOES NOT SALVAGE ITS LAWSUIT ....................................................... 12

VI. PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS FAIL ............ 14

VII. ANY AMENDMENT IS FUTILE ................................................................ 14

VIII. CONCLUSION............................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Biani v. Showtime*,
   143 F.4th 957 (9th Cir. 2025) ................................................................... 2, 3, 9

*Carlini v. Paramount*,
   2021 WL 911684 (C.D. Cal. 2021) ............................................................. 9, 13

*Chase-Riboud v. Dreamworks*,
   987 F. Supp. 1222 (C.D. Cal. 1997) .................................................................10

*Christianson v. W. Pub.*,
   149 F.2d 202 (9th Cir. 1945) ............................................................................2

*Collier v. McKay*,
   761 F. Supp. 3d 1300 (C.D. Cal. 2025) ...........................................................10

*Eden Film v. Lockjaw*,
   2025 WL 1386018 (C.D. Cal. 2025) .................................................................3

*Fillmore v. Blumhouse*,
   2017 WL 4708018 (C.D. Cal. July 7, 2017) .....................................................4

*Gable v. NBC*,
   438 F. App'x 587 (9th Cir. 2011) ....................................................................13

*Hanagami v. Epic Games*,
   85 F.4th 931 (9th Cir. 2023) .............................................................................2

*Kelly Toys v. Build-A-Bear Workshop*,
   2024 WL 3469028 (C.D. Cal. 2024) .................................................................2

*L.A. Printex v. Aeropastale*,
   676 F.3d 841 (9th Cir. 2012) ............................................................................2

*Levi v. Strong*,
   2019 WL 3293240 (C.D. Cal. 2019) .................................................................7

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ..........................................................................5

*Masterson v. Disney*,
  821 F. App'x 779 (9th Cir. 2020) ........................................................................... 3

*Rentmeester v. Nike*,
  883 F.3d 1111 (9th Cir. 2018) ......................................................................... 4, 14

*Ricketts v. CBS*,
  39 F. Supp. 3d 1199 (C.D. Cal. 2020) ................................................................ 13

*Segal v. Segal*,
  2022 WL 198699 (S.D. Cal. 2022) ..................................................................... 12

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ..................................................................... 11, 13

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ..................................................................... 11, 13

*Smith v. AMC Networks*,
  2019 WL 402360 (N.D. Cal. Jan. 31, 2019) ......................................................... 4

*Songster v. Interscope Records*,
  2009 WL 10701008 (C.D. Cal. 2009) ................................................................... 3

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................................ 4

*Whitehead v. Netflix*,
  2022 WL 17342602 (N.D. Cal. 2022) ................................................................ 12

*Woodland v. Hill*,
  136 F.4th 1199 (9th Cir. 2025) .................................................................... 2, 3, 5

*Zindel v. Fox Searchlight*,
  815 F. App'x 158 (9th Cir. 2020) ......................................................................... 3

DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

## I. INTRODUCTION

Despite amending its complaint, Plaintiff cannot cure the uncurable: the works at issue are not substantially similar in their protectable elements. Plaintiff's opposition misapplies the law and mischaracterizes the alleged similarities between Plaintiff's rom-com *Better Half* and Defendants' body horror film *Together*—two different stories that have little in common besides the fact that two people are stuck together at some point, in some manner.

Although it admits that *Better Half* borrowed this premise from Plato's *Symposium*, Plaintiff refuses to acknowledge that (1) this centuries-old concept is unprotectable, and (2) *Better Half* involves a conjoined pair trying to separate (which they do), while *Together* involves a detached couple trying (and ultimately failing) to stay apart. Instead, Plaintiff tells the Court to ignore the "mechanics of when and how the physical merger occurs." Opp. at 8. But this distinction is critical: the concept of physical merger (or separation) is not protectable. Instead, the only relevant inquiry is how that idea is expressed. Plaintiff also ignores black-letter copyright law, along with binding Ninth Circuit authority from just a few months ago affirming dismissals for lack of substantial similarity.

Plaintiff's comparison of the works fares no better. After Defendants' motion addressed each of Plaintiff's cherry-picked similarities, Plaintiff argues that Defendants are "splitting hairs." But Defendants addressed the random list of alleged similarities that *Plaintiff* highlighted, and demonstrated how those elements are unprotectable and/or expressed differently in the works. This is not "splitting hairs," it is applying the extrinsic test. That Plaintiff now wants the Court to ignore the very elements it selected only underscores the weakness of its claims.

The works are not substantially similar as a matter of law. Defendants respectfully request the Court dismiss Plaintiff's lawsuit with prejudice.

## II. COURTS ROUTINELY ASSESS SIMILARITY AT THIS STAGE

As Plaintiff concedes, courts can—and do—evaluate substantial similarity on motions to dismiss, and the Ninth Circuit routinely affirms dismissal for lack of substantial similarity. Opp. at 4-5; Mot. at 5. It has been the law for eighty years that "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison," assessing substantial similarity on a motion to dismiss is appropriate. *Christianson v. W. Pub.*, 149 F.2d 202, 203 (9th Cir. 1945). In the last few months, the Ninth Circuit issued two published substantial similarity decisions finding no substantial similarity at this stage. *See Biani v. Showtime*, 143 F.4th 957 (9th Cir. 2025) (television series); *Woodland v. Hill*, 136 F.4th 1199 (9th Cir. 2025) (photographs).[1]

Ignoring this authority, Plaintiff argues dismissal is "disfavored." Opp. at 4-5. But its cases predate *Biani* and *Woodland*, and all are either unpublished or involve non-film/television works that apply a different analysis. For example, Plaintiff quotes from *Kelly Toys v. Build-A-Bear Workshop*, 2024 WL 3469028 (C.D. Cal. 2024) (Staton, J.), but that involved an infringement claim concerning toy designs, not a film or screenplay.[2] Regardless, *Kelly* confirms that certain copyright cases *are* suitable for dismissal.

Plaintiff asserts that "discovery is needed" in copyright cases. Opp. at 5-6. But that argument—proffered by almost every plaintiff in response to a motion to dismiss—has been repeatedly rejected. As the Ninth Circuit explained in affirming dismissal, "[i]t is not that expert testimony is never required or that substantial

---

[1] Plaintiff falsely asserts that Defendants do not challenge ownership or access in this case. In reality, Defendants merely did not move to dismiss on those grounds at this stage. If this case survives dismissal, Defendants will show that *Together*'s screenplay predates *Better Half*'s.

[2] Published cases *Hanagami v. Epic Games*, 85 F.4th 931 (9th Cir. 2023) (choreography) and *L.A. Printex v. Aeropastale*, 676 F.3d 841 (9th Cir. 2012) (fabric design) do not pertain to film and television works.

2
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

similarity can always be determined as a matter of law on a motion to dismiss. Rather, the court is required to determine whether the complaint states a plausible claim." *Masterson v. Disney*, 821 F. App'x 779, 781 (9th Cir. 2020). In film and television cases like this one, courts ***regularly*** dismiss claims for lack of substantial similarity as a matter of law. *Id.* at 780-81 n.1 (affirming dismissal; collecting affirmances); *Eden Film v. Lockjaw*, 2025 WL 1386018 (C.D. Cal. 2025) (dismissing case; citing cases). Here, the Court does not need expert testimony to see that *Better Half* is a slapstick rom-com while *Together* is a graphic body horror, or that they are vastly different works with only superficial similarities based on a centuries-old concept.

      Plaintiff also submits an unsupported declaration claiming it intends to retain an expert on substantial similarity. Dkt. 37-1. Such proffers are improper. In *Songster v. Interscope Records*, Judge Fischer rejected a similar attempt to evade dismissal through the promise of anticipated discovery. 2009 WL 10701008, at *2 (C.D. Cal. 2009). The court explained that the attorney's "statements made in a opposition to a motion to dismiss, through declaration, or at a hearing are not a substitute for allegations in the complaint." *Id.*[3] Regardless, the proffered testimony would not change the outcome, as no expert is required to see that the works are not substantially similar.

### III. PLAINTIFF APPLIES THE WRONG LEGAL STANDARDS

      Plaintiff contends that the works' alleged similarities are more than "de minimis." But this is the wrong legal standard. Opp. at 6, 21-22. Plaintiff cites to an unpublished decision referencing de minimis language, Opp. at 6 (citing *Zindel v. Fox Searchlight*, 815 F. App'x 158 (9th Cir. 2020)), but the Ninth Circuit has not adopted this language in any published decision, including in *Biani* or *Woodland*.

---

[3] Plaintiff also argues that unidentified "drafts" of *Together* infringe Plaintiff's work, and it must be allowed to "develop" this claim. Opp. at 6. But Plaintiff's allegations relate to the film *Together*, not unidentified screenplay drafts.

Instead, courts may dismiss copyright claims where they determine the works are not substantially similar in their protected expression as a matter of law.

Plaintiff's remaining arguments fare no better. Plaintiff attempts to convince this Court that the "process of analytical dissection … cannot be resolved at the pleading stage." Opp. at 4. In reality, courts *must* engage in such analysis, by "filtering out" the "unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scenes a faire*." *Rentmeester v. Nike*, 883 F.3d 1111, 1118 (9th Cir. 2018). The three cases Plaintiff references do not hold otherwise. Two are unpublished, while the third, *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) is a music composition case confirming "literary works … are more easily broken into a small number of discrete elements to analyze."

Plaintiff also wrongly contends that the Court may not consider elements from other works in connection with the filtering process. Opp. at 8-9. Courts *routinely* consider such elements. *See Fillmore v. Blumhouse*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (filtering out certain elements as common to religious and horror, fantasy, and sci-fi works). Here, Defendants' motion referenced other works portraying people whose bodies become fused to show it's an unprotectable idea. Indeed, Plaintiff's own screenplay expressly references *The Human Centipede*, another film featuring people conjoined against their will. Dkt. 21-2 at 21. Plaintiff relies on an out-of-district case, *Smith v. AMC Networks*, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019), but that court expressly declined to follow Central District cases on the matter. *Id.* at *6.

## IV. THE WORKS ARE NOT SUBSTANTIALLY SIMILAR

### A. Plaintiff Refuses to Filter Unprotectable Elements

Plaintiff's opposition insists that this Court ignore Ninth Circuit authority on applying the extrinsic test and refuses to acknowledge that many of its claimed similarities—including the idea of portraying two people whose bodies are somehow joined—must be filtered out.

Having admitted that *Better Half* borrowed its premise from Plato's *Symposium*, Plaintiff declares that this concept is protectable because the works supposedly "invert" this concept. Opp. at 7-8. But whether a plot synopsis involves characters who are split apart or fused together, both are unprotectable ideas. Regardless, the works express this idea differently. While Plaintiff argues that "the mechanics of when and how the physical merger occurs do not alter the fundamental narrative inversion," Opp. at 8, in reality this difference goes to the heart of what matters: the "mechanics of when and how" the characters merge—or don't merge—is the very expression that must be analyzed.

### B. Plaintiff Repeatedly Misapplies the Extrinsic Test

Plaintiff's opposition then offers a series of inaccurate legal propositions. For example, Plaintiff argues the ***number*** of alleged similarities pled proves liability. Opp. at 7. Far from it. Courts repeatedly find the plaintiff's "list" of "random similarities scattered throughout" are insufficient to satisfy the extrinsic test because they are "inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984).

Plaintiff also advocates for an overly narrow interpretation of the *scenes-a-faire* doctrine, claiming it only applies to elements that are "indispensable" to a premise. Opp. at 13. But the Ninth Circuit has emphasized this concept also encompasses all situations and incidents which "flow naturally" from a basic plot premise or genre. Mot. at 5-8. Elements like struggling to navigate daily life, seeking medical attention, and desperately searching for ways to detach all flow naturally from works about characters stuck together. *Id*.

Hoping the Court will disregard the works' many differences, Plaintiff claims that the Court should not even consider those differences. Opp. at 9, 12. But courts "may identify differences in the works to explain why there is no substantial similarity." *Woodland*, 136 F.4th at 1211 n.4. The only published case Plaintiff

relies, *LA Printex*, is a fabric case involving almost identical designs which assessed their differences.

Although Defendants' motion identified dispositive differences in each of Plaintiff's claimed similarities, Plaintiff claims these are "superficial distinctions." Opp. at 1, 9-12. This is disingenuous. Defendants are responding to Plaintiff's claimed similarities by analyzing the actual expression—as the extrinsic test requires. If Plaintiff thinks these alleged elements are inconsequential, it is because *Plaintiff* chose them as the basis of its suit.

## C. The Plots and Sequence of Events Are Not Similar

Defendants established in its motion that the works are highly dissimilar, and contain fundamentally different expression. Plaintiff dismisses these differences as "trivial," or ignores them altogether, and does not actually contend with any differences in the works' plot points, scenes, or sequence of events.

For example, Plaintiff argues both works have a "rom-com" ending "where [protagonists] finally accept their conjoined existence." Opp. at 10. But the works' endings are nothing alike, and *Together* is definitely not a rom-com. *Better Half* concludes with the duo separating; *Together* features the couple graphically merging into one.

Plaintiff also asserts both works feature characters who miss a pivotal job opportunity due to their "physical merging." *Id.* at 11. However, *Better Half* features Art hiding in the couch while Daphne conducts an interview. In contrast, *Together*'s Tim misses a gig while *separated* from Millie. Plaintiff also claims both works feature "physical attachment at the genitals," *id.* at 8, but while *Better Half* describes its duo as connected from "upper thighs to their navels," the couple in *Together* sees numerous body parts fuse, including arms, legs, genitals, and eventually their entire bodies.

As to the works' bathroom scenes, Plaintiff claims that their differences are "superficial." *Id.* at 12. This is another example of Plaintiff trying to make

dissimilar scenes seem alike. *Better Half*'s bathroom scene is slapstick; Art and Daphne hide in a tub to avoid being seen by Art's ex-girlfriend (and are not having sex). *Together*'s nail-biting bathroom scene is not comedic at all: it features Tim and Millie having sex in a stall, during which they become stuck and Millie forcefully tears Tim out of her.

Plaintiff's remaining alleged similarities are mischaracterizations. For example, Plaintiff claims that both works depict proposals, Opp. at 11, but Art's off-screen proposals are repeatedly rejected and played for humor, while *Together* features Tim reluctantly accepting Millie's proposal (setting up a theme of Millie dominating the relationship). *Levi v. Strong*, 2019 WL 3293240, at *14 (C.D. Cal. 2019) (different "proposals" not similar). Plaintiff also references "seizures," Opp. at 11, but the duo in *Better Half* begins twitching, comedically controlling the other's limbs and forcing Art to eat boogers, whereas in the suspenseful scene in *Together*, a trance-like Millie convulses after propelling into Tim.

Plaintiff tries to make much of the fact that the Spice Girls are referenced in both works. Opp. at 10. Yet, references to a particular musical act are not protectable, and the scenes and dialogue in which they appear are unalike. Mot. at 11. Plaintiff suggests the song "2 Become 1" is dispositive because *Together* could have chosen "countless other songs with similar themes." Opp. at 10. But this argument is akin to saying a film about Christmas cannot reference "All I Want For Christmas Is You." No creator may monopolize the use of a song, and as Plaintiff concedes, *Better Half* merely references the song (but does not play it), while *Together* plays it (but does not reference it).

Plaintiff claims Defendants "try to downplay" the fact that both works contain references to saws and hospitals. Opp. at 11. But these unprotectable elements naturally flow from stories about people stuck together against their will,

7
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

and they present in totally distinct ways. Mot. at 11-12, 19. And *Better Half* features scenes at a hospital, which are not in *Together*.[4]

### D. There Are No Similar Characters

#### 1. Plaintiff Fails to Explain its Shifting Allegations

Plaintiff does not even address that it initially claimed the ***exact opposite*** character pairings were substantially similar. Mot. at 1, 14-15. This type of legal musical chairs underscores just how flimsy Plaintiff's allegations are. Worse, its opposition ignores the overwhelming dissimilarities between the characters.

#### 2. Art and Tim

Plaintiff again points to numerous unprotectable elements in arguing that Art and Tim are substantially similar, like they are "men in their 30s" and "stagnant in their careers." Opp. at 15. Plaintiff then alleges Art and Tim are "demasculaniz[ed] through awkward marriage proposals," but then admits the proposals are nothing alike. Nor does Plaintiff explain why a man crying (*Better Half*) or a woman proposing (*Together*) is "demasculinizing." Plaintiff also asserts both works feature "dependence … framed through material imagery" but then fails to offer any allegedly similar "imagery." Nor is Art being "coddled" by his mom similar to Tim, whose mother who went crazy. *Better Half* contains a passing reference to Art's mother, when Daphne teases him for accidentally calling an ex-girlfriend by his mother's name. In stark contrast, Tim's deranged mother haunts him in his dreams, and his trauma from finding her is the basis of his commitment-phobia.

Finally, Plaintiff claims Art and Tim's arcs are the same based on the final scenes, but the characters' ends could not be more dissimilar. After separating from Daphne, Art proclaims how much she meant to him, and they date *as separate*

---

[4] Plaintiff also contends that because both works feature "rodents … stuck together," they are the same. Opp. at 10. However, the animals differ, the circumstances of how they are stuck differ, and the scenes bear no resemblance.

8
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

*people*. Meanwhile, Tim and Millie finally succumb to the supernatural substance drawing their bodies together, and fuse into one person.

### 3. Daphne and Millie

Plaintiff's allegations as to Daphne and Millie are equally groundless. For example, Plaintiff now asserts that both women try to separate from their male partner, but this is *scenes a faire* to any work about a couple attached against their will. Opp. at 17-18. Plaintiff also claims distinctions between the women's careers and relationship status "do not diminish their expressive similarities," but provides no support. *Biani*, 153 F.4th at 964 (characters with "more significant differences" and "few real similarities" not substantially similar). Like with Art and Tim, Plaintiff also asserts that these characters have parallel character arcs by the end, but Daphne and Millie's endings have nothing in common.

### 4. Paul and Jamie

Plaintiff's claim that Paul and Jamie are similar is equally flimsy. Plaintiff pivots from its earlier assertion that Paul and Jamie serve as the "gay confidants" and now argues they are similar because both works feature a "plot twist … that they are gay." Opp. at 18. But the film's twist is that ***Jamie is an evil cult leader who is merged from two people***—not that he is gay. Plaintiff only tries to distinguish one of Defendants' cases which confirms a gay friend is not a protectable trope. Mot. at 17-18. According to Plaintiff, *Carlini v. Paramount* is irrelevant because it held that a character "who *unexpectedly* turns out to be gay [is] arguably unique. Opp. at 18 (citing 2021 WL 911684). But *Carlini* actually held that the *plot point* of a character using her "powers" (hearing people's thoughts) to find a potential love interest who is gay was arguably unique. *Id.* at *11. As to the characters themselves, the court confirmed the "gay friend" trope is common to rom-coms and the characters were "notably different." *Id.* at *12. Finally, Plaintiff argues both characters are "sexually" and "morally" slippery, but provides no supposed similarities.

9
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

### 5. Parental Characters

As for the parental "characters," Plaintiff concedes they are "presented differently." Opp. at 19. Despite *Together* only briefly showing Tim's mother in a flashback, and excluding his deceased father altogether, Plaintiff doubles down on its claim the parents are alike. Yet it offers no support for the notion characters can be similar when one does not even appear on screen, and another appears for a few seconds. Instead, Plaintiff opts for the generic allegations that the characters' parents have the same "function." *Id.* But characters' mere "function" does not give rise to copyright protection. *Chase-Riboud v. Dreamworks*, 987 F. Supp. 1222, 1228 (C.D. Cal. 1997) (generic character "defined by function" not protectable).

### E. The Settings Are Not Similar

In response to Defendants' arguments showing the differences in the works' settings, Plaintiff fails to address a single one. Instead, Plaintiff simply repeats the same unprotectable alleged similarities. It makes the same claim that the settings are similar because both are "set in the present-day United States" and "inside the home." Opp. at 19-20. Yet courts have held these exact locations are unprotectable because they are common to countless works. Mot. at 18-19. The specific settings of the works differ.

Plaintiff again points to the presence of a "school" and "medical setting." Opp. at 20. But these are unprotectable, and presented very differently. Mot. at 19; *Collier v. McKay*, 761 F. Supp. 3d 1300, 1312 (C.D. Cal. 2025) (settings not protectable when "lack[ing] special originality and serve as the backdrop for many, many works").

### F. The Themes Are Not Similar

In response to Defendants' motion, which established that Plaintiff's allegedly similar themes were generic concepts expressed differently (Mot. at 13-14), Plaintiff asserts that such "general themes are protectable" if expressed in an

original manner. Opp. at 13-15. But here, those alleged themes—codependency, enmeshment, autonomy—are expressed differently.

Plaintiff claims both works express "autonomy and lack of accomplishment in career" by featuring characters "sidelined in their professional ambitions." Opp. at 14. But these are just different ways of saying the same thing; every work about a lack of career accomplishment inevitably involves thwarted professional ambitions. Plaintiff also claims both works share themes of "separation" and "loss of identity" which are rendered similar because both works "invoke Plato's *Symposium*." Opp. at 13-14. However, referencing the *Symposium* in both works does not equate to expressing these themes in the same way.

Plaintiff does not even attempt to argue the remaining themes are expressed the same way. As to the concept of romantic relationships impacted by parents, Plaintiff admits these are different but argues the "distinctions do not diminish the shared thematic core." Yet the sole published case Plaintiff relies on, *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), fails to support this argument.[5] There, the Court found *extensive* similarities between two works, noting the plots "parallel[ed] each other" down to specific plot points expressed the same way, and the works had the same central theme expressed in identical ways. *Id.* While Plaintiff claims both works address the theme of suppressing oneself in a relationship, this is generic and expressed differently.

**G.   There Is No Similar Dialogue**

Although Plaintiff must show "extended similarity of dialogue" between the works, Mot. at 19-20, it fails to provide any dialogue it believes is similar. Opp. at

---

[5] It was also implicitly overruled in the Ninth Circuit's *en banc* opinion in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), which abrogated the "inverse ratio rule" permitting a lower showing of similarity when a high degree of access is shown. *Shaw*, therefore, required less similarity.

11
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

20. Instead, Plaintiff claims it met this high bar because both mention Plato's *Symposium*. *Id.* However, similar topics don't equal similar dialogue.

Plaintiff next argues that "references" to *Symposium* and the Spice Girls are sufficiently "idiosyncratic." Opp. at 20. But the sole case it cites held the same *titles* raised an inference of similarity, and does not address dialogue at all. *Id.* (citing *Segal v. Segal*, 2022 WL 198699, at *14 (S.D. Cal. 2022)). The titles of *Better Half* and *Together*'s are obviously distinct. Meanwhile, courts have held that a "similar reference" is insufficient when the dialogue differs. *Whitehead v. Netflix*, 2022 WL 17342602, at *20 (N.D. Cal. 2022) ("references to Black culture are not protectable without additional extended similarity in dialogue"). Plaintiff again fails to engage with almost all of Defendants' cases on this point.

## H. The Moods and Pace Are Not Similar

While Plaintiff asserts the works share the same moods and pace, it once again fails to provide specific examples to support either. Opp. at 19. Regarding mood, Plaintiff concedes that the works are "different genres." Although Plaintiff argues that both feature elements of the other genre, it provides no concrete examples. Mot. at 20-21. The only other claim Plaintiff makes—again, without specifics—is that both works are "character-driven," a statement so broad it applies to countless stories.

Turning to pace, Plaintiff disregards the many ways that the works' paces differ. Mot. at 21 (citing numerous differences). Instead, Plaintiff contends both are "largely chronological" and are "paced as full-length features," generic elements found in literally thousands of films.

## V. PLAINTIFF'S SELECTION-AND-ARRANGEMENT THEORY DOES NOT SALVAGE ITS LAWSUIT

Despite only making three conclusory references to "selection and arrangement" in the FAC, Plaintiff now attempts to argue that it somehow saves its claim. Opp. at 3-4, 20-22. But the selection-and-arrangement standard is

demanding, and the Ninth Circuit has not found infringement under this "selection and arrangement" theory in any case involving a film, television series, book, play, or other literary work in more than twenty years.

Plaintiff's opposition simply regurgitates a bullet point list of the same twelve overgeneralizations and misrepresentations described above. Opp. at 21. Courts routinely reject attempts to plead copyright infringement by selection-and-arrangement where the works treat the selected elements in different ways, as is the case here. *See Ricketts v. CBS*, 39 F. Supp. 3d 1199, 1221 (C.D. Cal. 2020) (rejecting selection-and-arrangement argument where works "[told] decidedly different stories;" "most of the similarities between the two works flow[ed] from the basic plot" or were "overstate[d]"); *Gable v. NBC*, 438 F. App'x 587 (9th Cir. 2011) (rejected selection-and-arrangement argument because plaintiff's list of similarities were *scenes a faire*; "superficial points of comparison" between plaintiff's screenplay and defendants' television series were "gleaned haphazardly"). Plaintiff's cherry-picked list of alleged similarities are "superficial points of comparison," expressed differently, and do not support this theory.

Plaintiff's reliance on *Shaw* does not change this conclusion. As stated above, *Shaw* was implicitly overruled by *Skidmore*. Because Skidmore's purported similarities were "just 'random similarities scattered throughout … the works,'" the Court found them insufficient to support a selection-and-arrangement theory. *Id.* The same is true here.

Regardless, *Shaw* found those works contained *highly specific*, plot points from beginning to end, each of which paralleled the other step-by-step with such specificity that there was a clear pattern. *Carlini*, 2021 WL 911684, at *11-12 (C.D. Cal. 2021) (distinguishing *Shaw*'s "concrete pattern" of highly-specific similarities; rejecting selection-and-arrangement claim). Here, by comparison, Plaintiff's "list" has no pattern whatsoever, and the elements selected definitely do not closely "parallel" each other.

13
DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FAC

## VI. PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS FAIL

Despite asserting secondary infringement claims in one sentence (FAC ¶ 97), Plaintiff argues it has sufficiently pled secondary infringement. But even if this threadbare allegation was sufficient—it is not—Plaintiff's secondary infringement claims fail along with its direct infringement claim. Mot. at 22.

## VII. ANY AMENDMENT IS FUTILE

In the event the Court grants dismissal, Plaintiff's opposition seeks leave to amend. Opp. at 23. But the Court need only review the works to conclude they are not substantially similar, and Plaintiff cannot plead around their overwhelming differences. The works themselves control and no amendment can change them. *See Rentmeester*, 883 F.3d at 1125.

## VIII. CONCLUSION

Besides the unprotectable premise of two people stuck together in some way, lighthearted rom-com *Better Half* and horror film *Together* are not substantially similar as a matter of law. Defendants respectfully request that this Court dismiss Plaintiff's FAC with prejudice.

DATED: November 5, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
ADRIAN F. VALLENS

By: /s/ Nicolas A. Jampol
       Nicolas A. Jampol

Attorneys for Defendants
NEON RATED, LLC; WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC; MICHAEL SHANKS; ALISON BRIE; and DAVE FRANCO

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this Memorandum contains 4,200 words, which complies with this Court's Initial Standing Order for Civil Cases.

By: /s/    Nicolas A. Jampol
        Nicolas A. Jampol