UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:25-cv-04294-JLS-SK                                    Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Kelly Davis | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:                        Attorneys Present for Defendants:

Not Present                                                            Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 34)**

Before the Court is a Motion to Dismiss filed by Defendants William Morris Endeavor Entertainment, LLC ("WME"), Dave Franco, Alison Brie, Michael Shanks, and Neon Rated LLC (collectively, "Defendants"). (Mot., Doc. 34.) Plaintiff StudioFest, LLC opposed, and Defendants responded. (Opp., Doc. 37; Reply, Doc. 38.) Having held a hearing on February 6, 2026, and for the following reasons, the Court DENIES Defendants' Motion.

I.      **BACKGROUND**

Plaintiff StudioFest is a production, financing, and distribution company that aims to discover and elevate new voices. (FAC ¶ 22, Doc. 31.) In 2019, StudioFest optioned a screenplay written by Patrick Phelan entitled *Better Half*, which is "about two people who become fused together." (*Id.* ¶¶ 21–22.) StudioFest owns the copyright to the *Better Half* screenplay, which it registered on April 7, 2025. (*Id.* ¶ 23.) StudioFest eventually produced the screenplay into a motion picture, but Plaintiff alleges only infringement of the screenplay. (*Id.* ¶ 24.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                  Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

In producing the *Better Half* film, StudioFest hired a casting director to extend offers to Defendants Dave Franco and Alison Brie through their agents at WME.  (*Id.* ¶ 26.)  The casting director emailed a synopsis of the project and a full copy of the *Better Half* script to Defendants and their agents for review.  (*Id.* ¶ 27.)  The next day, a WME agent followed up to inform the casting director that Franco would pass.  (*Id.* ¶ 28; *see also* Ex. A to FAC.)

The *Together* script was written by another WME client, Defendant Michael Shanks, who is represented by the same agent as Defendant Franco.  (FAC ¶ 31.)  Plaintiff alleges that "after obtaining access to the *Better Half* script, Defendants incorporated protected elements of the work into drafts of the *Together* screenplay and ultimately into the *Together* motion picture."  (*Id.* ¶ 32.)  Plaintiff brings one count of copyright infringement, stemming from a number of alleged similarities between the films.  (*Id.* ¶ 89.)

Defendants filed the present Motion to Dismiss the FAC, arguing that the works are not substantially similar as a matter of law.  (Mot., Doc. 34.)  The Court has reviewed the *Better Half* screenplay and *Together* film.  Because Defendants' Motion requires the Court to compare various elements of each work, the Court finds it necessary to include a brief synopsis of both works.

      A.    ***Better Half* Synopsis**

Phelan conceived of *Better Half* after reading Plato's *Symposium* and thinking that "a film about two people who become fused together lent itself to comedic expression."  (FAC ¶ 21.)  Indeed, the film begins with the male protagonist, Art, a community college classics professor, recounting Aristophanes' speech in *Symposium* to his students.  (*Better Half* Screenplay at 3.)  The speech describes man's beginnings, in which humans were round, with eight limbs and two faces.  (*Id.*)  The gods feared humans' strength, so Zeus took his lightning bolt and split these round humans into two.  (*Id.*)  Ever since, Art tells

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                           Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

his students, "[w]e spend our lives . . . searching for our missing half."  (*Id.* at 4.)  As Art describes the myth, a classroom projector image displays a sharpie outline of a "humanoid CREATURE with two faces, back to back on the same head."  (*Id.* at 3.)

As Art recounts the story, he begins to cry and we learn that his girlfriend recently left him after he proposed to her, and that this scenario has happened to Art multiple times before.  (*Id.* at 4, 7.)  His friend, Paul, tells him "[e]very woman you date you transform into a new person.  What happened to your dreams of becoming an archaeologist?"  (*Id.* at 7.)  We soon meet Daphne, the female protagonist, a tattoo artist who avoids emotional attachment with her partners.  (*Id.* at 9–10.)  Art and Daphne meet at a local bar, where Daphne seeks a one-night stand and Art seeks "Mrs. Right."  (*Id.* at 11.)  After spending the night together, the two are awakened by the sound of a mouse stuck to a sticky trap on the floor.  (*Id.* at 18.)  The two find that they are attached by a growth of skin that "stretches from her navel to his."  (*Id.* at 18.)  Soon after, Art's ex-girlfriend comes to the apartment, and the two hide in the bathroom where they are eventually discovered, seemingly caught in intimacy.  (*Id.* at 30.)

The two spend the remainder of the movie trying to detach, but the attachment grows larger.  Their conflicting personalities and views of relationships often come to a head.  The two try to detach forcibly, using electric shocks, medical interventions, and even a chainsaw.  (*Id.* at 57, 77–78, 91.)  At the hospital, the emergency room doctor informs them that their attachment is growing, and shows them a doodle similar to the "humanoid CREATURE" Art showed his students in the opening scene.  (*Id.* at 3, 77–78.)  As the attachment grows, the two learn that they can control the other's movements.  (*Id.* at 61.)

Throughout, the two continually analogize their condition to Plato's *Symposium* as well as other pop culture references, like the Spice Girls' song "2 Become 1."  (*See id.* at 26, 60.)  Art reveals that he has the song on vinyl, and at the end of the movie Daphne discovers his box of Spice Girls records.  (*Id.* at 26, 85.)  Eventually, the two accept their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                      Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

condition, and as the screenplay nears its close, the two dance together as a record plays in the background.  (*Id.* at 86–87.)  Having learned through the other how to fix their flawed approaches to relationships, the movie ends with the couple waking up detached, as Zeus was once again scared of their "strength as a couple."  (*Id.* at 91–92.)  The movie ends with the two meeting again at a bar and deciding to go on a date.  (*Id.* at 95.)

   B.    *Together* **Synopsis**

*Together* is a "supernatural 'body horror' thriller" that "explores a long-time couple's relationship following an unknowing encounter with a supernatural substance that progressively attracts their bodies to one another."  (Mot. at 10.)  In the opening scene of the film, two dogs drink from a pool of water in the woods, then morph into a deformed creature.  (*Together* Film at 4:50, Doc. 21-3.)  The film centers on a couple: Millie and Tim, who have decided to move to the countryside together for Millie's job as a teacher, and the film begins with their going-away party.  At the party, Tim's friends warn him that he has lost himself, and Millie's friend tells her she should be worried about Tim's deadbeat behavior.  (*Id.* at 6:52, 7:15.)  Regardless, at the party, Millie proposes to Tim in front of all their friends, which Tim initially seems to reject, then awkwardly accepts to save face.  (*Id.* at 9:15.)

Upon arriving at their house in the countryside, Tim discovers a family of rats fused together behind a light.  (*Id.* at 14:00.)  At work, Millie meets her coworker Jamie, who is also the couple's new neighbor.  (*Id.* at 17:00.)  Millie and Tim go hiking in the woods, but fall into a cave while trying to escape a torrential downpour, where they discover a pool of water.  (*Id.* at 20:30.)  Thirsty, the two drink the water, fall asleep, and wake up with their legs attached by a thin layer of flesh.  (*Id.* at 30:00.)  Over the coming days, Tim has episodes where he experiences an unescapable pull towards Millie, and upon touching her, becomes physically attached, which they initially do not realize.  (*See, e.g.*, *id.* at 42:15.)  For example, instead of going into the city to record music with his friends, Tim leaves his luggage at the train station and shows up at the school where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                             Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

Millie works. As Tim is pulled to the school, Millie discovers one of her students doodling an image of two conjoined dogs. (*Id.* at 48:16.) Millie then calls a friend and recounts her and Tim's first date, where she revealed that her favorite band is Spice Girls, prompting Tim to bring a Spice Girls vinyl record to their second date. (*Id.* at 49:32.)

When Tim arrives at the school, the two have sexual intercourse in a bathroom stall, before discovering they cannot detach. (*Id.* at 52:05.) After painfully pulling apart, the two are forced to hide from Jamie, who talks to Millie from outside the stall. (*Id.* at 53:35.) Later that day, Millie goes to Jamie's house to apologize, and Millie opens up about questioning her relationship. Jamie then tells Millie about Aristophanes' speech in Plato's *Symposium*: "Plato wrote that the ancient Greeks believed we were created with four arms, four legs, and a head with two faces. But Zeus feared our power, so he split us into two separate parts. Dooming us to spend our lives in search of the other half." (*Id.* at 59:15.)

That night, Millie and Tim finally discover that their bodies are growing together after waking up in the middle of the night pulled to one another, then desperately try to prevent their bodies from conjoining. The next morning, their forearms are attached, forcing Millie to cut them apart with a small electric saw. (*Id.* at 1:16:17.) The pair decides to go to the hospital, but Millie left her car keys at Jamie's house and must retrieve them. There, she finds out that Jamie has known of the supernatural substance all along, and that the cave the couple stumbled upon is a site where a cult would perform "marriages" in which couples drank from the pool before merging into a single being. (*Id.* at 1:22:50.)

When the couple reunites at their house, they again must resist their bodies' urge to conjoin. Ultimately, they accept that they cannot resist the pull. Tim pulls out the *Spice* record he gave Millie on their second date, and the couple dances to "2 Become 1" as their bodies join. (*Id.* at 1:32:00.) In the final scene of the film, Millie's parents arrive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                       Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

at their house, and the door is opened by single, androgynous figure, the "merged" couple.  (*Id.* at 1:36:00.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.  Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III.    ANALYSIS

### A.     Legal Principles

Proof of copyright infringement requires a showing that (1) Plaintiff owns a valid copyright in *Better Half*; and (2) Defendant copied aspects of the work.  *Skidmore as Tr.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                          Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

*for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020.)  Defendants do not challenge that Plaintiff owns a valid copyright.

      To show that Defendants "copied protected aspects of [Plaintiff's] work," Plaintiff must establish "both (1) copying and (2) unlawful appropriation." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940–41 (9th Cir. 2023).  While the parties refer to both of these prongs as the need to allege "substantial similarity," that is incorrect; each prong requires a different showing.  *Skidmore*, 952 F.3d at 1064.

      Without direct evidence of copying, Plaintiff must allege facts showing that "the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."  *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).  "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work."  *Rentmeester* 883 F.3d at 1117.  The similarities must be such that they are explained by "copying rather than . . . coincidence, independent creation, or prior common source."  *Skidmore*, 952 F.3d at 1064 (quoting *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)).

      Defendants do not dispute Plaintiff's allegations that they had access to *Better Half*, which was sent to Defendants prior to the release of the allegedly infringing work.  (FAC ¶¶ 26–28.)  Furthermore, since Defendants base their motion on a dispute of "substantial similarity," including arguments that certain elements are unprotectable—an issue that arises only in addressing the "unlawful appropriation" prong— the Court infers that they do not dispute that the works are similar enough for Plaintiff to plausibly allege circumstantial evidence of copying.  Accordingly, the Court turns to the "unlawful appropriation" prong.

      Because the 1976 Copyright Act "does not forbid copying writ large," the unlawful appropriation (illicit copying) prong requires that a plaintiff "must demonstrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04294-JLS-SK                                       Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

that the works share *substantial* similarities." *Hanagami*, 85 F.4th at 941 (emphasis in original). The Ninth Circuit "uses a two-part test to assess substantial similarity. The first part, known as the 'extrinsic test,' 'assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression.'" *Id.* (quoting *Rentmeester*, 883 F.3d at 1118). "The second part, referred to as the 'intrinsic test,' 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.'" *Id.* (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008)). "Only the extrinsic test's application may be decided by the court as a matter of law, so that is the only test relevant . . . on a motion to dismiss." *Rentmeester*, 883 F.3d at 1118.

"In no case does copyright protection . . . extend to any idea [or] concept, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Thus, copyright protection "only covers an artist's expression, not the idea underlying that expression." *Hanagami*, 85 F.4th at 941. So, to compare protectable elements as required by the extrinsic test, the Court must "filter out" "the unprotectable elements of plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject.)" *Rentmeester*, 883 F.3d at 1118. For screenplays, the Ninth Circuit has often looked to "similarities at the levels of plot, characters, themes, mood, pace, dialogue or sequence of events." *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006).

Having reviewed the works at issue here, the Court concludes that Plaintiff has plausibly alleged substantial similarities in plot, sequence of events, and theme between the two works.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                     Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

### B.    Plot and Sequence of Events

The broad concept of conjoined lovers is, of course, not protectable expression. Nevertheless, Plaintiff alleges that *Better Half* and *Together* overlap in many more specific plot elements.  For example, Plaintiff alleges that both films "center around a couple who wake up to find their bodies physically fused together as a metaphor for codependency."  (FAC ¶ 40.)  Plaintiff also alleges that in both films "the characters struggle to navigate daily life as their physical attachment progresses . . . and they desperately search for ways to detach their bodies."  (*Id.* ¶ 42.)  Further, in both works "the protagonists initially attempt to conceal their physical attachment . . . but by the end, they no longer try to hide their condition" at which point they "accept their conjoined existence in a culminating scene where the characters pull out a vinyl record and dance together."  (*Id.* ¶¶ 44–45.)

While these plot points are, in some respects, described at too high a level of generality to be protectable, Plaintiff alleges that a core plot point in both films overlaps: "what is highly unique about *Better Half*, and mirrored in *Together*, is that the story reverses [the premise of Plato's *Symposium*:] rather than depicting a split followed by a search for reunion, the protagonists are forcibly merged, and the narrative centers on their struggle to separate."  (*Id.* ¶ 75.)  Defendants argue that the mechanism of separation varies:  in one film the couple seeks to remain apart, while in the other the couple seeks to separate.  (Mot. at 15.)  But the process of conjoining does little to alter that the plot of each is plausibly rooted in an inversion of Plato's *Symposium*.

Defendants argue that Plato's *Symposium* is not protectable in and of itself.  (*Id.* at 14.)  But the cases Defendants cite on this point deal with the pure use of theology and folklore, rather than particular deployments.  *See Purohit v. Legend Pics.*, 448 F. Supp. 3d 382, 388 (D. Del. 2020) (works contained the same "Krampus" folklore character); *Douglas v. Osteen*, 560 F. Supp. 362, 367 (E.D. Pa. 2008) (books contained the same biblical stories).  But Plaintiff argues a narrower infringing use of the public-domain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                      Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

work.  Plaintiff does not argue that *Together* infringes by simply using Plato's *Symposium*, but by deploying a scene featuring a lesson on Plato's *Symposium* to frame the plot's unique reversal of the public domain work.

Defendants point to a number of films that center on conjoined protagonists, but notably none that express that premise by inverting Plato's *Symposium*.  And even so, the Court is "not the authority" on the distinctiveness of the inversion; this is a topic "best addressed by additional evidence, not arguments in a motion to dismiss." *Changing World Films LLC v. Parker*, 2023 WL 8044348, at *6 (C.D. Cal. Sept. 12, 2023) (Gee, J.) (finding substantial similarity in part because of a "core similarity" of a show trial, and holding that it was improper for the Court to determine whether such trials were a "trope of police revenge movies.").

In addition to this use of the same essential plot device to express its premise, Plaintiff alleges that details in the sequence of events in *Together* substantially overlap with *Better Half*.  Many of these plot elements and details are ones that "flow necessarily or naturally from a basic plot premise" and therefore cannot go to a finding of infringement.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002).  For example, Plaintiff alleges that *Together* copies a scene from *Better Half* in which the protagonists "discuss using a chainsaw as a detachment device and have a similar fight about going to the hospital for medical intervention." (FAC ¶ 76.)  The unprotectable premise of involuntarily conjoined lovers leads naturally to attempted detachment by medical intervention and even, potentially, with power tools.

Other scenes are described by Plaintiff at too high a level of generality to constitute protectable expression.  *See Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 965 (9th Cir. 2025).  For example, Plaintiff alleges that "[i]n both stories, a torrential downpour of rain forces the couple to spend the night together and they wake up to discover that the physical merging process has begun." (FAC ¶ 69.)  That the inciting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04294-JLS-SK                                                Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

incident of both stories began on a dark and stormy night is simply too high a level of generality to weigh in favor of substantial similarity.

But Plaintiff has alleged substantial similarity of certain critical details used to advance the plot in both films.  For example, Plaintiff points out that both films use crude hand-drawings to foreshadow the protagonists' fate, both films begin with "awkward marriage proposals," both works begin with a "similar visual motif of rodents that are stuck together," and both works feature "a similar bathroom sequence where the protagonists are attached at the genitals and attempt to hide their intimate encounter from a minor character waiting just outside."  (*Id.* ¶¶ 64–77.)

In a particularly illustrative example, Plaintiff alleges that "both works include multiple references to the Spice Girls—including the song '2 Become 1'—and feature a character who has a vinyl copy of the record."  (*Id.* ¶ 69.)  This detail infuses some of the broader overlaps in plot.  For example, Plaintiff alleges that "in both works, the protagonists accept their conjoined existence in a culminating scene where the characters pull out a vinyl record and dance together."  (*Id.* ¶ 45.)  This overlap is made more concrete because the couple in *Together* chooses to play Spice Girls' "2 Become 1" on vinyl, which is referenced throughout *Better Half*.

Nor is the Spice Girls record a clearly insignificant detail in either film.  In *Better Half*, the characters describe their situation through recurring cultural references, one of which is to the Spice Girls.  Shortly after becoming attached, Art says to Daphne, "It's kind of like . . . that Spice Girls song, 'Two Become One [sic.].' You familiar? . . . I have it on vinyl.  Too bad all my records are in storage."  (*Better Half* Screenplay at 26.)  Later on, as the characters realize they can control each other's limbs, leading to chaos, Art laments, "This wasn't in Plato . . . This isn't in the Spice Girls . . ."  (*Id.* at 60.)  And finally, as the screenplay nears the end and the characters look through Art's books for Plato, Daphne finds *Spice World* in a box of records: "I can't believe you have all these records collecting dust.  Or how many copies of *Spice World* you own."  (*Id.* at 85.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                         Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

In *Together*, the Spice Girls similarly feature prominently.  Millie tells a friend partway through the film that on her first date with Tim, "I said my favorite band was the Spice Girls" then "he shows up on our second date with *Spice* on vinyl." (*Together* Film at 49:30–40.)  Then, at the end of the film, as Millie and Tim accept their fate and conjoin fully, Tim pulls out the copy of *Spice* on vinyl.  In the penultimate scene, the couple dances to "2 Become 1" as their bodies start to fully conjoin. (*Id.* at 1:31.27–1:33.02.)

Defendants argue that "the group is referenced in totally different ways" and that "no one may monopolize references to the Spice Girls or '2 Become 1' in a work, especially in a work that is literally about that topic." (Opp. at 18.)  But the similarities in the parties' use of "2 Become 1" and the Spice Girls go beyond mere use of the song.  In both films, the Spice Girls is a *recurring* motif used to express the underlying premise: two lovers literally becoming conjoined.  And that motif is further embodied in a vinyl album that the characters carry with them throughout the film.  In both films, the Spice Girls are a pop culture analogue for Plato: in *Better Half*, the characters contemplate the Spice Girls in combination with references to Plato, and in *Together* the Spice Girls are the soundtrack of the couple's final unification.

To be clear, the Court does not believe that mere use of a song throughout a film is enough to establish substantial similarity.  And in other cases, overlapping references may be *de minimis*.  But "[e]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity*.*" *Hanagami*, 85 F.4th at 945 (quoting *Baxter v. MCA Inc.*, 812 F.2d 421, 425 (9th Cir. 1987)).  A fact-finder could plausibly find that the embodiment of the films' shared premise in a *Spice Girls* vinyl record carried *throughout* both films is a qualitatively important motif, even if it is mentioned infrequently.  At this stage, we cannot say that copying this detail is *de minimis*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04294-JLS-SK                                                              Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

   Lastly, in addition to the clear overlap between each film's basis in an inversion of Plato's *Symposium* and recurring use of a Spice Girls vinyl record, there are numerous other overlaps in the films' broad plot sequence and expression of the premise.  To re-iterate a few: both films begin with marriage proposals, feature a scene where the protagonists are caught physically stuck in an apparent intimate encounter in a bathroom, and feature drawings of conjoined figures to foreshadow the protagonists' fate.[1]  Accordingly, the similarity of certain broad plot points, manifested through overlapping details, leads the Court to believe that Plaintiff has sufficiently alleged substantial similarity in plot and sequence of events.

  **C.**  **Themes**

   Second, Plaintiff has plausibly alleged substantial similarity of protectable thematic elements.  The FAC alleges that "[i]n both works, Plato's *Symposium* is used as a storytelling device to explore the theme of codependency.  According to Aristophanes' Myth in Plato's *Symposium*, humans were split in two and spend their lives searching for their missing half to feel whole again.  By contrast, *Better Half* and *Together* focus on the perils of enmeshment, showing how it can be a source of pain and lead to a loss of personal identity."  (FAC ¶ 47.)

   "A work's theme is its overarching message."  *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016.)  Both films explore themes of codependency and enmeshment in relationships, and importantly those themes are expressed by

---

[1] Defendants briefly indicate that the hand-drawn images of conjoined dogs are different from the doodles in *Better Half* because the former is "gruesome" while the latter is "comedic." (Mot. at 19.)  But while the cartoon-like images in the *Better Half* film are dissimilar to the grotesque doodle of a mutant dog, the *Better Half* script describes the images simply as "humanoid [creatures] . . . like identical twins conjoined at the spine." (*Better Half* Screenplay at 3.)  The tone of this description is not at all clear, in fact it is one of the most grotesque descriptions in the script.  Accordingly, it is plausible that a fact-finder could find these descriptions substantially similar to the embodiment in the *Together* film.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:25-cv-04294-JLS-SK                                    Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

inverting the myth in Plato's *Symposium*.  (*See* Opp. at 15.)  Defendants respond that "referencing the *Symposium* in both works does not equate to expressing these themes in the same way."  (Reply at 38.)  But it is difficult to imagine how a theme could be expressed more literally in the same way than by using the same recurring literary inversion.  Again, Plato's *Symposium* is not a passing reference—it is the fundamental premise of *Better Half*; and in *Together* it figures only slightly less prominently.  To be sure, the story itself is unprotectable, as, of course, is "exploration of codependency" or the premise of conjoined lovers.  But the use of the same literary inversion as a thematic device shows that the films have a close "overarching message or underlying meaning" or similarly "communicate some sort of moral lesson."  *Silas*, 201 F. Supp. 3d at 1180.  Plaintiff has plausibly alleged substantial similarity in the themes of each film.

   D.   **Remaining Elements and Conclusion**

   The Court is less persuaded by Plaintiff's arguments going to substantial similarity in mood, pace, dialogue, characters, setting, or "selection, coordination, and arrangement."  However, a review of these elements is unnecessary because the Court believes that the similarities in plot, sequence of events, and theme are substantial enough for the claim to survive a Motion to Dismiss.  The Ninth Circuit has cautioned district courts to tread carefully at the motion to dismiss stage in determining whether plot elements are protectable expression or unprotectable tropes, and instead to wait for experts to weigh in at later stages of litigation.  *See Zindel v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 160 (9th Cir. 2020); *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020).

   These unpublished decisions caution that "[d]ismissal is warranted only if, 'as a matter of law['] the similarities between the two works are only in uncopyrightable material or are de minimis.'"  *Zindel*, 815 F. App'x at 159 (quoting 3 William F. Patry, Patry on Copyright § 9:86.50).  Rather than speculate as to the protectability of certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04294-JLS-SK                        Date: February 20, 2026
Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al

literary devices, this is a case "in which discovery could shed light" on issues that matter to the outcome. *Rentmeester*, 883 F.3d at 1123.

Defendants' recent Ninth Circuit citations do not convince the Court otherwise. In *Biani*, the dismissal was primarily because Plaintiff did not allege evidence of copying; the panel then briefly indicated that the alleged similarities were also too general to allege unlawful appropriation. 153 F.4th 957, 965 (2025). And *Woodland* considered a direct application of this Circuit's standard for infringement of photographs, which is not at issue here. *Woodland v. Hill*, 136 F.4th 1199, 1210–11 (9th Cir. 2025). Neither of these cases were ones that required the court to determine whether literary plot elements were protectable. Accordingly, given the early stage of litigation, the Court determines that Plaintiff has plausibly alleged that the works are substantially similar in plot and theme.

     **E.**     **Secondary Liability**

In a single paragraph, Defendants argue for dismissal of any claim for secondary liability. (Mot. at 29.) First they state that "[b]ecause Plaintiff's claim for direct infringement fails, its claims for contributory and vicarious infringement also fail." *Id.* But the Court concludes Plaintiff has stated a claim for direct infringement. Next, they argue that "a threadbare allegation of secondary infringement is insufficient to state a valid claim." *Id.*

Here, Plaintiff pleads only a single claim for copyright infringement, encompassing direct, vicarious, and contributory liability. Granting the motion to dismiss two of these three theories would not, as it is required to, "dispose of an entire claim." *Kan v. Gen. Motors LLC*, 2023 WL 11197090, at *1 (C.D. Cal. Nov. 7, 2023) (Staton, J.); *see Hernandez v. Path*, 2012 WL 5194120, at *6 n.7 (N.D. Cal. Oct. 19, 2012) ("Federal Rule of Civil Procedure 12(b)(6) is not an appropriate device to eliminate a portion of a claim."); *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The Court is unaware . . . of any situation in which a Rule 12(b)(6) motion may be used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:25-cv-04294-JLS-SK | Date: February 20, 2026 |
| Title: Studiofest LLC v. William Morris Endeavor Entertainment, LLC et al | |

to strike certain allegations in support of a claim, where the underlying claim itself is not challenged."). Accordingly, the motion to dismiss on this basis is denied.

## IV.    CONCLUSION

For the above reasons, Defendants' Motion is DENIED.

Initials of Deputy Clerk: kd